ROBERT H. ANDERSON *v.* LATIMER POINT
MANAGEMENT CORPORATION ET AL.
(13352)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued April 5—decision released July 12, 1988

*Richard P. Weinstein,* for the appellant-appellee (plaintiff).

*Robert J. Papp,* with whom, on the brief, were *Thomas J. Keramidas, Robert W. Clark* and *Jane Cable,* for the appellee-appellant (named defendant).

COVELLO, J. The plaintiff, Robert H. Anderson, a resident of Latimer Point, Stonington, commenced this equitable action against the defendant, Latimer Point Management Corporation (LPMC), his lessor, and

fourteen of his neighbors who were present or former directors of LPMC. The plaintiff sought an injunction restraining the defendants' interference with the proposed use of his Latimer Point property in a number of subject matter areas.[1] The plaintiff also claimed compensatory and punitive damages together with attorneys' fees.[2]

The trial court found some of the issues for the plaintiff and enjoined the defendants from: (1) interfering with the plaintiff's maintenance of certain shrubs, trees and other vegetation; (2) interfering with the plaintiff's membership in LPMC upon his payment of certain past due assessments; (3) pursuing the collection or levy of past fines from the plaintiff; and (4) pursuing a contemplated eviction of the plaintiff.

The plaintiff has appealed, contending that the court erred in: (1) refusing to grant an injunction restraining LPMC's interference with a proposed second story addition to his cottage; (2) concluding that the plaintiff should pay a portion of past due assessments as a

---

[1] Specifically, the plaintiff sought an injunction prohibiting the defendants from: (1) interfering with his proposed addition of a second story to the existing cottage; (2) interfering with the installation of a well; (3) interfering with other construction that would include a garage; (4) interfering with the planting and maintenance of shrubs and other vegetation; (5) erecting a fence; (6) barring his participation as a member in LPMC; (7) collecting previously levied fines, penalties and assessments; (8) interfering with his peaceful and quiet enjoyment of the premises; (9) interfering with his proposed use of existing waterfront improvements; (10) discriminating in the application of the rules, regulations and sublease provisions of LPMC; and (11) any proposed eviction.

[2] The plaintiff's amended complaint contained four counts. The first purported to set forth a cause of action under 42 U.S.C. § 1983 for violation of the plaintiff's federal constitutional and state constitutional rights. The second claimed that LPMC was improperly organized under the Connecticut nonstock corporation laws. The third alleged the breach of the terms of a sublease contract executed by LPMC and assigned to the plaintiff. Finally, the fourth count claimed that LPMC had established and sought to enforce rules and regulations that were impermissibly vague and contrary to the Connecticut nonstock corporation laws.

condition to his membership in LPMC; and (3) refusing to award attorneys' fees. LPMC cross appealed claiming error in the court's failure to award attorneys' fees to the defendant corporation. We find no error.

The court found that Latimer Point is a peninsula located in Stonington. Prior to 1979, it was owned in its entirety by John Bindloss. Bindloss leased lots to various individuals who constructed summer homes upon them. Bindloss "governed" the peninsula and his approval was required for any proposed construction or planting. Part of his motive for this requirement was to maximize the water views for all the lessees. Although not perfectly accomplished, existing houses are situated on the various lots so as to afford the lessees a view of the water. Bindloss died in 1979, and Latimer Point was conveyed to Latimer Point Company, Inc.

In 1972, the individual lessees formed Latimer Point Management Corporation (LPMC), a nonstock corporation, pursuant to General Statutes § 33-419 et seq. The purpose of the corporation was to lease, sublease, maintain and improve Latimer Point.

In 1979, Latimer Point Company, Inc., leased the entire peninsula to LPMC for a term of thirty years. LPMC in turn executed a series of identical subleases to the individual lot holders for thirty year terms. The subleases provided that each lot could have one private home to be maintained in its present location. Alterations to existing structures or material changes to the surface or vegetation required prior approval of the sublessor, which approvals *would not be unreasonably withheld.* With the exception of existing trees, vegetation was not to obstruct the water views of other sublessees.

In May, 1981, Percy Wilcox assigned his sublease of lot 10 to the plaintiff. The plaintiff applied to LPMC

for permission to add a second story to the dwelling on lot 10. The corporation denied his request. Having heard the evidence and after viewing the property, the trial court concluded that the required approval had been reasonably withheld because the proposed second story would substantially interfere with the water views of other sublessees.

The trial court further found that LPMC had denied the plaintiff his voting rights in LPMC and threatened his eviction by reason of his failure to pay dock assessments. He had also been fined by LPMC for failing to pay his pro rata share of other LPMC assessments, including legal expenses incurred in seeking to enforce the LPMC bylaws against the plaintiff. The trial court concluded that a portion of the dock assessment had been unfairly levied against the plaintiff because LPMC had not timely notified the plaintiff that the town had assessed the docks.[3] The trial court also concluded that the sections of the bylaws sought to be enforced against the plaintiff were impermissibly vague and without standards. The trial court therefore concluded that the plaintiff need not pay the fines, the legal expense assessment and the 1981–1982 dock assessment but that the balance of the accrued assessments was owed by the plaintiff as an incident to his exercise of voting privileges in LPMC. The trial court also concluded that any contemplated eviction of the plaintiff for nonpayment of the erroneously levied fines and assessments was not in order.

I

The plaintiff first claims error in the trial court's refusal to grant an injunction restraining interference with his proposed second story addition. In this connection he advances two arguments.

---

[3] In 1981–1982 the docks were taxed as separate entities for the first time.

First, the plaintiff challenges the court's conclusion that LPMC acted reasonably in withholding permission for the addition because it would encroach on the view of the water from other properties. The plaintiff characterizes this conclusion as, in effect, creating "an easement of light or air by prescription or implication." The plaintiff argues that General Statutes § 47-25[4] prohibits the creation of such easements through adverse possession. The plaintiff cites no authority for the proposition that the court's ruling created such an easement nor does our research disclose this to be the case. We conclude that no prescriptive interest in favor of adjoining properties was created by the court's holding and therefore § 47-25 is inapplicable.

Second, the plaintiff argues that LPMC had no adequate rules, bylaws or other procedures governing construction applications. The trial court found the only specific reference in the bylaws concerning construction applications to be impermissibly vague and incapable of providing standards.[5] Although not specifically articulated, the plaintiff implies that these deficiencies in the LPMC bylaws somehow required the trial court to issue the injunctive relief requested. This argument overlooks the significant role of the exercise of the trial court's broad discretion in injunctive matters and the fact that the trial court could and did consider not only the language of the sublease between the parties but also the insights gained from personal inspection of the property.

---

[4] General Statutes § 47-25 provides: "No occupant of real estate may acquire, by adverse occupation, the right to keep, sustain or enjoy any window or light, so as to prevent the owner of adjoining premises from erecting and maintaining any building thereon."

[5] Section R-17 of the LPMC bylaws provides: "All plans for construction, reconstruction or additions shall have the prior written approval of the Board of Directors, subject to appeal in the same manner as provided in Section 11 of these By-Laws."

"It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances. *Leo Foundation* v. *Cabelus,* 151 Conn. 655, 657, 201 A.2d 654 [1964]. . . . 'Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satisfactory reasons.' *Goodwin* v. *New York, N.H. & H. R. Co.,* 43 Conn. 494, 500 [1876]; *Ginsberg* v. *Mascia,* 149 Conn. 502, 505, 182 A.2d 4 [1962]." *Nicholson* v. *Connecticut Half-Way House, Inc.,* 153 Conn. 507, 511, 218 A.2d 383 (1966).

"We have repeatedly held that the issuance of an injunction rests in the sound discretion of the trial court." *Berin* v. *Olson,* 183 Conn. 337, 340, 439 A.2d 357 (1981). "[I]ts action will not be disturbed unless it has abused its discretion." *Connecticut Light & Power Co.* v. *Holson Co.,* 185 Conn. 436, 440, 440 A.2d 935 (1981).

The trial court viewed the premises, found that the proposed addition would substantially interfere with the water views of others, and declined to grant the requested injunction against LPMC. "[T]he visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath." *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176 (1965).

The court assessed the relative harm to others should the injunction issue and concluded that its entry was inappropriate. " 'In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction. . . .' *Moore* v. *Serafin,* 163 Conn. 1, 6, 301 A.2d 238 (1972)." *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.,* 188 Conn. 531, 541–42, 450

A.2d 369 (1982). We therefore find no abuse of discretion in the trial court's declining to issue the requested injunction.

## II

The plaintiff next claims that the trial court erred in ordering that he pay a portion of certain past due assessments levied by LPMC as a condition to his participation as a member in good standing in LPMC. He argues that in a prior suit between the parties[6] LPMC could have raised the past due assessments issue and that, it having failed to do so, the issue is now res judicata as between these parties. We disagree.

Examination of the complaint discloses that the plaintiff alleged that "the defendant corporation has sought to collect dues, assessments, fines, and alike, from the plaintiff even though the plaintiff was denied participation in said corporation during the time applicable to the dues, assessments, etc." LPMC denied this allegation.

The plaintiff's theory was that the assessments were not due because LPMC had denied him participation in the corporation. The theory at trial was not, as he now alleges, that LPMC's claim to assessments was barred by res judicata, a legal doctrine which must be specially pleaded. Practice Book § 164.

Since the plaintiff had not alleged that res judicata was implicated in the determination of the assessment issue, "[t]he trial court was entitled to follow the theory on which the case was tried. *Alexander* v. *Alexander,* 107 Conn. 101, 106, 139 A. 685 [1927]." *Housing Authority* v. *Pezenik,* 137 Conn. 442, 448, 78 A.2d 546 (1951). Moreover, "[a] party cannot present a case to the trial court on one theory and then ask a reversal

---

[6] *Latimer Point Management Corporation* v. *Anderson,* 1 Conn. App. 310, 471 A.2d 670 (1984).

in this court on another. *Arcari* v. *Dellaripa*, 164 Conn. 532, 537, 325 A.2d 280 [1973] . . . ." (Citation omitted.) *Silverman* v. *St. Joseph's Hospital*, 168 Conn. 160, 176–77, 363 A.2d 22 (1975). Accordingly, we do not address this issue further.

## III

Finally, both parties have appealed the denial of their requests for attorneys' fees. The plaintiff claims an award pursuant to General Statutes § 42-150bb,[7] while LPMC claims to be entitled under 42 U.S.C. § 1988.[8] We disagree with both contentions.

---

[7] General Statutes § 42-150bb provides: "ATTORNEY'S FEES IN ACTION BASED ON CONSUMER CONTRACT OR LEASE. Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party. No attorney's fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

[8] Title 42 of the United States Code, § 1988, provides: "PROCEEDINGS IN VINDICATION OF CIVIL RIGHTS; ATTORNEY'S FEES

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law,

## A

Section 42-150bb is a statutory authorization for attorneys' fees to be awarded "as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon [a] contract or lease" when that consumer is a party to a lease that provides for attorneys' fees to the lessor. The trial court found that the sublease here in issue, which provided for attorneys' fees to the sublessor, fell within this statutory definition of a "lease" but declined to award counsel fees for the reason that the plaintiff had not successfully prosecuted a claim under the lease. We agree.

The orders entered in behalf of the plaintiff concerning vegetation, assessments, LPMC membership and eviction were all based on inadequacies found by the court in the LPMC bylaws and not in the sublease. Thus, the court was correct in concluding that the plaintiff had not successfully prosecuted his action under the lease. The defendants, however, had also filed a counterclaim seeking: (1) a mandatory injunction directing the plaintiff's removal of certain unapproved vegetation; (2) an injunction restraining his further planting; and (3) an injunction restraining his addition of a second story to his house. The court rendered judgment for the plaintiff on the counterclaim. The further issue

as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

thus remains as to whether the plaintiff's successful defense of this counterclaim entitles him to an award of attorneys' fees under § 42-150bb.

The vegetation issues were decided on the basis of the inadequate bylaws and not on considerations involving the sublease. The issue of adding the second story was resolved against the plaintiff on the basis of his complaint and not the counterclaim. Therefore, the court's rendering of a judgment in favor of the plaintiff on the counterclaim does not, in reality, constitute a successful defense of a counterclaim under the lease. Therefore, § 42-150bb is not applicable and the court correctly concluded that attorneys' fees were not authorized.

### B

LPMC based its claim for attorneys' fees on the provisions of 42 U.S.C. § 1988. Section 1988 provides that "in any action or proceeding to enforce a provision of [section] . . . 1983 . . . the court, *in its discretion,* may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." (Emphasis added.)

The first count of the plaintiff's complaint purported to state a cause of action under 42 U.S.C. § 1983.[9] The trial court rejected this claim. On the basis of § 1988, LPMC then sought an award of attorneys' fees. The court concluded that the plaintiff's claim that LPMC's conduct constituted state action that had violated his civil rights under § 42 U.S.C. 1983, although novel, was

---

[9] Title 42 of the United States Code, § 1983, provides: "CIVIL ACTION FOR DEPRIVATION OF RIGHTS

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

not frivolous and had been made in good faith. It therefore declined to award attorneys' fees pursuant to the exercise of the discretion authorized by the statute. This court will not interfere except in the case of a clear abuse of that discretion. *Link* v. *Shelton,* 186 Conn. 623, 629, 443 A.2d 902 (1982). Under the circumstances of this case, we find no error in the exercise of the court's statutorily authorized discretion in declining LPMC's claim for attorneys' fees.

There is no error.

In this opinion the other justices concurred.