[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The plaintiffs, husband and wife, commenced this action against the defendant New London Police Department, its chief of police, the defendant Kistner, and unidentified New London police officers, seeking a temporary and permanent injunction against the defendants from unjustifiably stopping and detaining them, and from harassing, intimidating, frightening or threatening them. A hearing was held on the application for the temporary injunction and the court heard testimony and received documentary evidence.
 I.
The plaintiffs, who are black, allege that they have been area residents for several years and have no criminal records and further essentially allege that since May 1991, they have been the targets of wrongful conduct on the part of unidentified New London police officers.
On May 20, 1991, with the plaintiff husband driving, his wife, their two children and two unrelated youngsters as passengers, their vehicle was stopped for a faulty muffler by two police cruisers. Two police officers pointed guns at the plaintiffs and a check on Mr. Dunham's license and registration was performed. After several minutes, one of the police officers, later identified as Moreau, returned the papers. The police officers were laughing about the incident and when asked by Mr. Dunham the reason for the stop, one replied "get your exhaust checked." No summons citation was issued as a result of this stop. CT Page 353
On July 1, 1991, Mr. Dunham was stopped and issued a speeding citation, which identified him as white. When he pointed out this obvious error to the police officer, the officer replied "you are white today." Mr. Dunham testified that he was either stopped and detained by, or had encounters with police officers on eight other occasions, between July 1, 1991 and June 1992, some when he was alone, once when with his wife, and some when accompanied by one or more of his children. When his vehicle was stopped, his license and registration were checked; during some of the stops or encounters, racial or other insulting epithets were made to him, on other occasions, none were. On the occasion in June 1992, when accompanied by his wife, there was no stop, but a police officer in a cruiser followed them and stared at them for a few moments. Aside from the June 1992 incident, the only encounter the plaintiff wife had with the police was the May 20, 1991 stop. The plaintiff husband could not identify any of the officers, or recognize any as having stopped him more than once. Nor did the plaintiffs obtain a badge number, police cruiser number or plate number or any means of identification relating to any of the police officers in any of the encounters with the exception of the incident involving the speeding ticket and the June 1992 incident. Except for a stop involving one black and one white officer, all of the police officers involved were white.
Neither plaintiff complained of any of the incidents to police department officials; however, in May 1992, Mr. Dunham wrote to the New London Day, a daily newspaper, describing his problem with the police. He then shortly after appeared at a New London City Council meeting at which the creation of a civilian review board was discussed. He was then interviewed by the defendant Kistner who assigned deputy chief Rinehart to do an investigation into the plaintiffs' complaints.
Rinehart testified that it was the policy of New London police officers, for the purpose of ensuring the officer's safety when stopping a motor vehicle, to call in a license plate check to the dispatcher and advise the dispatcher that the officer was leaving the cruiser. The police department maintains a computer record of these checks. He also testified that a "collect" statewide system is maintained through which identifications of vehicle CT Page 354 registrations and their owners can be obtained, either by the police officers directly or the dispatcher. Rinehart ran a computer check of "call in checks" relating to the plaintiff Dunham's vehicle on both systems and determined that Officer Moreau called in the May 20, 1991 stop (gun pointing incident), and confirmed that Officer Hesney issued the speeding ticket on July 1, 1991. See Defendant's Exhibit 2. No other license plate "call in checks" relating to Dunham were found in either system. Rinehart interviewed both Moreau and Hesney, and each professed no recollection of the incident each was involved in. Rinehart also interviewed the other officers on shift on May 20, 1991 and learned nothing. Rinehart did not testify as to any investigation of the June 1992 incident in which the plaintiff wife identified a police cruiser with license plate number NL60.
The plaintiffs claim that they have been humiliated, placed in great fear and apprehension and suffered irreparable harm, and now seek a temporary injunction prohibiting any New London police officer from stopping or detaining them without probable cause unless when operating a traffic enforcement program, a road block or the like, and if they are stopped, an order that the officer state the reasons for the stop and notify his shift supervisor of such stop on the record in writing.
 II.
A temporary injunction is a preliminary judicial order, granted at the outset or during the pendency of an action, forbidding performance of threatened acts alleged in the complaint until the rights of the parties respecting them have been finally determined by the court. Deming v. Bradstreet, 85 Conn. 650, 659 (1912). The primary purpose of a temporary injunction is to preserve the status quo and protect the moving party from immediate and irreparable harm until the rights of the parties can be determined after a full hearing on the merits. Olcott v. Pendleton, 128 Conn. 292,295 (1941). The plaintiffs, to be entitled to such relief, must show: (1) probable success on the merits of their claim; (2) irreparable injury; (3) the lack of an adequate remedy at law; and (4) a balancing of the results or harm which may be caused to one party or the other by the granting or denying of the temporary relief requested. See Griffin Hospital v. Commission on Hospitals Health Care, CT Page 355196 Conn. 451, 457 (1985).
"The issuance of an injunction is the exercise of an extraordinary power which rests in the sound discretion of the court . . ." Scoville v. Ronalter, 162 Conn. 67, 74 (1971). This is so, even where the danger of irreparable injury has been demonstrated. City of Hartford v. American Arbitration Assn., 174 Conn. 472, 477 (1978).
Putting aside the failure of the plaintiffs to comply with the bond provisions of General Statutes52-472,[1] the court will assume, without deciding, that the plaintiffs have shown good cause for a waiver of a bond.
The court must analyze the facts proved by the plaintiffs in the light of the above stated principles, and determine, in the exercise of its discretion, whether a temporary injunction against the defendants is warranted. The plaintiffs must show that they are in danger of sustaining substantial and immediate injury if the injunction is not granted. See City of Los Angeles v. Lyons, 461 U.S. 95,101-102 (1983). Past injury alone is insufficient, although it may support the likelihood of future recurrences; but, to obtain an injunction the plaintiffs must demonstrate either present continuing injury or the likelihood of future injury. O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974).
Even assuming that the plaintiffs have suffered irreparable injury as a result of the stops they have been subjected to, the court on the record cannot find that the plaintiffs met their burden of proof with respect to the other factors the court must consider.
First, the plaintiffs have not demonstrated probable success on the merits of their claim. There was no showing that the defendant police chief or any supervisory officers of the police department knew of any of the stops or encounters the plaintiffs were subjected to. There was also no showing that the defendant chief or the department itself had any policy in effect to stop or harass the plaintiffs, or that the chief or any supervisory officials were causally connected in any way to the police misconduct claimed. Nor was there any showing by the plaintiffs that there was a pattern created by the individual instances of police misconduct which was either condoned or authorized by the CT Page 356 chief or the defendant department generally. See Monell v. New York Department of Social Services, 436 U.S. 658 (1978). Nor have the plaintiffs shown whether any of the stops, detentions or encounters were made or caused by individual officers in concert or, as part of a conspiracy, or made by one or more officers repeatedly as part of a pattern to harass or intimidate these plaintiffs. "We must and should presume that any officer of (a municipality) will act lawfully, correctly, in good faith and in sincerity of purpose in the execution of his duties. Kinsella v. Jaekle,192 Conn. 704, 729 (1984).
Second, the plaintiffs have not shown the lack of an adequate remedy at law. The plaintiffs can resort to an action for damages for the prior acts of police misconduct. As to the future, they have not met their burden to show that they are in imminent danger of being subjected to future misconduct by any officer of the New London Police Department. For all that appears, no complaints of any such activity occurring after June 1992 to the time the hearing in this case was completed, January 12, 1993, were made by the plaintiffs. Moreover, now that the police chief and other supervisory officers have actual notice of the plaintiffs' claims of police misconduct, both the plaintiffs and this court should be able to rely on the duty of the defendant police chief to properly restrain any perceived acts of police misconduct which may be directed toward these plaintiffs. "We have long recognized that no court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it, for these fears may exist without any substantial reason." Moore v. Serafin, 163 Conn. 1, 11 (1972).
In balancing the results and harm to the respective parties, the court is loath to interfere with the operation of a municipal police department, except in exceptional or extraordinary circumstances. As no plan, pattern or policy of police misconduct established or condoned by either the chief or the department toward the plaintiffs has been shown, no such exceptional or extraordinary circumstances exist. As to the unidentified officers, and officers Moreau and Hesney, who were identified, there is also no such showing of threats of imminent or continuing misconduct directed specifically at these plaintiffs. CT Page 357
"It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances. . . . Restraining the action of an individual or a corporation by injunction is an extraordinary power always to be exercised with caution and never without the most satisfactory reasons." Anderson v. Latimer Point Management Corporation, 208 Conn. 256, 263 (1988) (citation omitted). Even greater caution must be exercised and more compelling reasons must exist for the court to issue an injunction to a named public official or municipal agency who are presumed to have acted lawfully in the first place. In this case, such reasons are not present. Accordingly, the plaintiffs' application for a temporary injunction must be, and is, denied.
Teller, J.