[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 556
The plaintiffs brought this action seeking damages for injuries and losses arising from a motor vehicle accident which occurred on November 28, 1986, at approximately 1:25 in the afternoon, in the Town of Cheshire. The plaintiff Amy Bower was a front seat passenger in a vehicle operated by David V. D'Onfro. Both individuals attended the same high school where, prior to the accident, they had volunteered several hours of their time in helping to prepare for a school dance. AS the vehicle proceeded in a westerly direction along Higgins Road, it suddenly left the travel portion of the road and Amy Bower was ejected from the vehicle and thrown onto the highway where she was run over by a motor vehicle operated by the defendant Bradley Ausmus.
The Ausmus vehicle dragged Amy Bower approximately 68 feet before coming to a stop. Thereafter, the plaintiff was pinned beneath the vehicle for a period of time before she could be removed safely and she sustained third degree burns to the neck, left forearm and left wrist in addition to other severe injuries. Some of the injuries sustained by the plaintiff required extensive and repeated surgery over a period of time.
Prior to the accident, the Ausmus vehicle was travelling some distance to the rear of the vehicle operated by D'Onfro and both vehicles were travelling at a speed greater than the posted speed limit.
This action was made returnable September 22, 1987. On February 17, 1989, the plaintiffs filed an offer of judgment (#133) pursuant to the provisions of Practice Book, Section 346. The plaintiffs offered to stipulate judgment against all defendants for the sum of $700,000. The defendants in the case at that time were David V. D'Onfro, Bradley D. Ausmus and Lin Ausmus. The offer of judgment stated:
 "1. That the Defendant, DAVID V. D'ONFRO, pay the sum of $400,000.00;
 2. That the Defendants, BRADLEY D. AUSMUS and LIN AUSMUS pay the sum of $300,000.00; and
 3. That an of per of less than the sum of $700,000.00 from any CT Page 557 Defendant shall not be accepted by the Plaintiffs."
On February 21, 1989, the defendant Ausmus filed a motion to strike the plaintiffs' offer of judgment (#134) on the ground that Section 346 of the Practice Book did not provide for a "conditional" offer of judgment. On February 23, 1989, the plaintiffs filed a request to amend their offer of judgment and an amendment (#135) which stated:
 "The plaintiffs in the above-entitled action, pursuant to Practice Book Section 346 et seq. and C.G.S. Section 52-192a, hereby offer to take judgment of the Defendants in the amount of SEVEN HUNDRED THOUSAND DOLLARS and 00/100."
None of the defendants objected to the amendment which was filed less than eighteen months from the date of the filing of the complaint and related back to the original offer. Moreover, the motion to strike (#134) was never claimed for argument nor was it accompanied by the memorandum of law required by Section 155 of the Practice Book and must be considered abandoned.
On June 6, 1990, the defendant D'Onfro filed an offer of judgment to settle the claims made against him for $400,000.00. The offer was accepted and judgment entered for the sum of $400,000.00 on March 12, 1991. A trial proceeded on the plaintiffs' claim against the defendant Ausmus. On March 26, 1992, the jury returned a verdict for the plaintiffs in the amount of one million dollars, finding D'Onfro 50% negligent and Ausmus 50% negligent. Ausmus therefore was liable on the judgment for the sum of $500,000.00, the "net amount of [plaintiffs'] damages . . . as against the defendants Bradley Ausmus and Lin Ausmus."
The plaintiffs then moved for judgment pursuant to the provisions of General Statutes, 52-225 (a) in the amount of $478,326.90 with 12% annual interest from the return date of this action to the day of the hearing on the motion — September 22 1987 through May 12, 1992 — $266,553.01, plus the interest running thereafter which computes at $157.26 per diem. The plaintiffs, pursuant to Public Acts 86-338, 4-6, reduced the CT Page 558 jury award of one million dollars by $43,346.10, the total of all medical payments received by them. The balance of $956,653.90 was then subject to the verdict with interest computed pursuant to the provisions of General Statutes, 52-192a(b):
 [a]fter trial the court shall examine the record to determine whether the plaintiff made an `offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his `offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount. . . . [T]he interest shall be computed from the date the complaint in the civil action was filed with the court if the `offer of judgment' was filed not later than eighteen months from the filing of the complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the `offer of judgment' was filed.
Sections 345-350, Practice Book, track the statutory provisions in setting forth the procedures regarding an offer of judgment. The defendants objected to plaintiffs' motion and also moved to set aside the verdict.
In objecting to the plaintiffs' motion for judgment, the defendants argue that the verdict falls outside of the statutory provision that the "plaintiff [recover] an amount equal to or greater than the sum certain stated in his `offer of judgment.'" They further argue that the plaintiffs did not file a "new" offer of judgment following acceptance of the D'Onfro settlement offer. Both parties cite Civiello v. Owens-Corning Fiberglass Corp.,208 Conn. 82 (1988), in support of their respective claims. It was determined in that case that the word "recovered" as used in52-192a(b) refers to the judgment of damages entered by the CT Page 559 court rather than the jury verdict.
The defendants' reliance on the ruling in Civiello is misplaced. The plaintiffs in Civiello filed an offer of judgment pursuant to a 52-192a which was significantly different from the52-192a applicable in this case. The statute authorizing the offer of judgment filed by the Civiello plaintiffs on November 22, 1979 was amended by Public Act 82-228. That amendment deleted the earlier reference to the possibility of plaintiffs filing revised offers of judgment and also precluded the filing of more than one offer of judgment in a case, although plaintiffs still can refile the same offer of judgment which a defendant failed to accept within the applicable time limits. See, Commentary to Practice Book 348.
The option of filing a revised offer of judgment after the settlement with D'Onfro was not available and, therefore, Civiello is inapposite. Significantly, the defendant Ausmus did not ask for further clarification of the offer of judgment following the settlement with D'Onfro. Since the statute dictates that an offer of judgment by a plaintiff must be accepted within thirty days from the date of filing or be deemed to be rejected, failure of the defendants to accept the Bower offer within the thirty period following the filing of the offer on February 17, 1989, or the offer as amended on February 23, 1989, meant the offer was deemed rejected by operation of law.
The offer of judgment filed on February 17, 1989 appeared consistent with the purpose of 52-192a(b) as well as the court's observation in Civiello that "where there are multiple defendants, no one of them would ordinarily be inclined to accept an offer of judgment for a sum approaching the full amount of damages likely to be awarded to a plaintiff, unless the likelihood of his being held solely liable were extreme." The offer reflected the plaintiffs' belief as to the reasonable potential liability of each defendant. Nothing in our statutes, rules of practice or caselaw support the Ausmus' motion to strike on the ground set forth in the motion. Nor would a motion to strike appear to be proper under our rules of practice. See Practice Book, 152; Mingachos v. CBS, Inc., 196 Conn. 91, 108
(1985) (a motion to strike challenges the legal sufficiency of the allegations of a pleading). Also, see Nelson v. Armstrong,1 Conn. L. Rptr. 278, 279 (February 15, 1990, Fuller, J.) (plaintiff amended offer of judgment by dividing the original amount into separate offers against each defendant). CT Page 560
In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. Ford Motor Credit Co. v. B. W. Beardsley, Inc., 208 Conn. 13, 20 (1988). A statute should not be interpreted to thwart its purpose. Builders Service Corp. v. Planning Zoning Commission, 208 Conn. 265, 276 (1988). The factors considered by courts in construing a statute include its legislative history, its language, the purpose it is intended to serve as well as the circumstances surrounding the enactment of the statute. Verrastro v. Sivertsen, 188 Conn. 213, 221 (1982).
An award of interest pursuant to 52-192a(b) is punitive in nature and authorized by legislation enacted to promote fair and reasonable compromise of litigation without trial. Edward Denike Tree Co. v. Butler, 21 Conn. App. 366, 369 (1990), citing Crowther v. Gerber Garment Technology, Inc., 8 Conn. App. 254,267 (1986); also, see Gillis v. Gillis, 21 Conn. App. 549, 554
(1990).
This action was commenced against multiple defendants. It would be irrational for the court to construe 52-192a(b), General statutes, to provide that no interest be awarded unless the amount recovered from one set of defendants is greater than the statutory offer of judgment that reflected the total potential liability of all of the defendants when it was filed. Such an interpretation could only serve to defeat the purpose of the statute, particularly where, as here, the plaintiffs, in response to the defendants' motion to strike, revised a proper offer of judgment. Any ruling here must be consistent with the legislative intent "to promote fair and reasonable compromise of litigation." Denike, supra.
Furthermore, having followed the ruling in Civiello and common sense, the plaintiffs should not be penalized by defendants Ausmus filing of a motion to strike. Ausmus, having rejected a "sum certain" in the original offer, filed a pleading that was responded to with an amended offer that reflected the sum of the initial figures as a total potential liability of all defendants. "Equity will enforce statutes for the benefit of those entitled to relief." 30A C.J.S. Equity, 35 (1992). Moreover, "`[t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court.'" Reynolds v. Ramos,188 Conn. 316, 320 (1982). CT Page 561
In light of the equitable principles which guide and instruct the court, a review of the record pursuant to the provisions of Section 52-192a(b) leads to the determination that the plaintiffs have "recovered an amount equal to or greater than the sum certain stated in . . . . [plaintiffs' duly filed] `offer of judgment.'" As noted earlier, the defendants failed to accept that offer. The plaintiffs are entitled to "effective, convenient, direct and complete relief" under the facts or this case. See, General Statutes, 52-192a(b); Monroe v. Middlebury Conservation Commission, 187 Conn. 476, 482 (1982). The amended offer of judgment is for $700,000.00 as to all defendants. The jury found each set of defendants 50% liable. Notwithstanding that finding of fact by the jury, the court finds that the fairest and most equitable solution necessitates dividing the offer equally between the two sets of defendants and, therefore, determines that the offer of judgment against the Ausmus defendants stands at $350,000.00.
Since the jury award of $500,000.00 against Ausmus is greater than $350,000.00, the plaintiffs are entitled to 12% interest annually on the $500,000.00 award from September 15, 1987, the date plaintiffs' action was filed with the court. As noted previously, both the offer of judgment and the amended offer relating back to the offer were filed within eighteen months from the filing of the complaint.
Even when one considers only the original offer of judgment, which the court believes accurately reflects the legislative purpose and intent embodied in 52-192a(b), the $500,000.00 award is greater than the $300,000.00 "sum certain" offered to the Ausmus defendants. Accordingly, the plaintiffs still would be entitled to 12% interest annually from the date this action was filed in court. General Statutes, 52-192a(b).
This cause of action arose on November 28, 1986. Tort Reform I governed actions arising after October 1, 1986. Under Tort Reform I, collateral source payments are to be deducted from the verdict entered against a liable party. The Ausmus defendants contend that since they were the only party against whom a verdict was returned, the $400,000.00 D'Onfro settlement as well as $43,346.10 in medical insurance payments should be deducted from the $500,000.00 verdict. Judgment on the D'Onfro settlement was entered on March 12, 1991. Such a bizarre result would be inherently inequitable and ill-considered. Under both CT Page 562 Tort I and Tort II, certain collateral source payments are to be deducted from an award determined by the trier of fact. General Statutes, 52-225a.
Tort I defined collateral sources as "any payments made to the claimant, or on his behalf, (1) by any person as compensation for personal injury or wrongful death attributable to the incident giving rise to the cause of action." General Statutes,52-225b. Such language would seemingly require the court to deduct both the settlement and medical payments from the award. However, the legislature amended 52-225b with the enactment ofPublic Act 87-227, 5. In so doing, the legislature redefined the definition of "collateral sources" to specifically exclude amounts received by a claimant as a settlement. That amendment was passed to avoid the invidious mischief that would occur in this case should the party defendants be allowed deduction of the D'Onfro settlement as a "collateral source."
Under Section 2-85, General Statutes, the Law Revision Commission was established as part of the legislative department. The commission is composed of legislators, judges, attorneys and law professors. General Statutes, 2-86 (a). Pursuant to2-87 (4), the judiciary committee requested the Law Revision Commission to analyze Tort I and the commission report was issued in January, 1987. On April 30, 1987, the Senate began considering changes to Tort I that were eventually enacted in Tort II.
On April 30, 1987, Senator Avallone summarized the changes sought to be made in Tort I and said that a short time after the effective date of Tort I, October 1, 1986, "it was determined by all parties concerned, that is the Law Revision Commission in the state of Connecticut, an objective body; judges of the Superior Court; members of the Trial Bar, both on the plaintiff's side and on the defense side . . . that the bill was technically flawed." 1987 Senate Proceedings, p. 1932. Senator Avallone further noted that "it was found in last year's bill [Tort I] that [settlements] could be determined to be a collateral source, and thereby deductible from the judgment. All parties [i.e., the law revision commission, et al.] agreed that was a double shot at the victim. It wasn't fair. It has been eliminated." Id., p. 1940.
The Law Revision Commission posited a hypothetical in its report that is identical to the instant matter: CT Page 563
 What may result is a double deduction from the total damages of the amount due from a settling defendant.
 To illustrate this problem, consider an accident caused by the negligence of two joint tortfeasors resulting in $100,000 in personal injuries. Assume that each tortfeasor is 50% at fault and that one of the tortfeasors settles for $50,000. The victim Sues the remaining tortfeasor for his remaining $50,000 in injuries. Under the Act, the jury awards the victim $50,000 against the remaining tortfeasor. The Act's collateral source rule, however, then requires the court to reduce that $50,000 award by the amount of any collateral source payments, including payments received in settlement. The $50,000 award is therefore reduced by the $50,000 settlement, resulting in a net award to the victim of $0. This award, of course, deprives the victim of $50,000 in compensation, and is clearly not intended by the Act. The language of the Act should be clarified to ensure that such a result does not occur.
Commission report, p. 20-21 (1987).
As noted earlier, General Statutes, 52-225b, was amended in Tort II in order to avoid the result set forth in the hypothetical. See, Sen. Proceedings p. 1940. In Turner v. Turner, 219 Conn. 703, 717 (1991) the court ruled that:
 According to well established principles of statutory construction, an amendment that construes and clarifies a prior CT Page 564 statute operates as the legislature's declaration of the meaning of the original act. . . . If an amendment is enacted soon after controversies arise regarding the interpretation of the prior act, it is logical to regard the amendment as a legislative interpretation of the original act.
"An act that has been passed to clarify an existing statute, . . . is . . . to be applied retroactively." Rudewicz v. Gagne,2 Conn. App. 285, 288 (1990), citing Darak v. Darak, 210 Conn. 462,473 (1989). There is no doubt that the legislature did not intend that settlement payments be deducted from damages awarded to a plaintiff by the trier of fact. Equitable principles and case law dictate that the defendant Ausmus is not entitled to a deduction of the D'Onfro settlement as a "collateral source".
Section 52-225b(2)(A) of the General Statutes requires that the court deduct medical payments made to the plaintiffs. Accordingly, the jury award of $1,000,000.00 is hereby reduced by the sum of $43,346.10, leaving a balance of $956,653.90. Plaintiffs shall recover of the defendants Ausmus the sum of $478,326.95 plus 1296 annual interest from the return date of this action, September 22, 1987.
The plaintiffs' motion for judgment is granted. The defendants' objection to the motion is overruled. The defendants' motion to set aside the verdict rendered herein is denied.
BY THE COURT
Leander C. Gray, Judge