[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE APPLICATION FOR TEMPORARY/PERMANENT INJUNCTION
On May 13, 1998, the plaintiff, James R. Pace, III, pled guilty to two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a.[1] Pursuant to those convictions, Pace was sentenced to three years in prison, suspended after six months, and three years probation. Pace served a portion of his sentence and was released from incarceration to the supervision of the department of adult probation on September 23, 1998. The General Assembly enacted Public Act 98-111, to the statutory scheme commonly known as Megan's Law[2] on May 27, 1998, two weeks after the plaintiff's guilty plea. Public Act 98-111 became effective on October 1, 1998. At the time of Pace's plea, General Statutes § 54-102r (a), which defined the crimes that subjected offenders to the registration requirements of Connecticut's Megan's Law, did not encompass convictions for sexual assault in the fourth degree. Section 54-102r was repealed, effective October 1, 1998, in conjunction with the enactment ofP.A. 98-111. Subsequent to his release from incarceration on September 23, 1998, the plaintiff Pace was arrested on unrelated charges and pled guilty on February 25, 1999. On March 18, 1999, as a result of those unrelated charges and violating probation, Pace was sentenced to three and one-half years in prison, suspended after 18 months and was placed into the custody of the commissioner of correction. The defendant[3], Dr. Henry C. Lee, is the commissioner of public safety for the state of Connecticut, whose department is charged with administering the sex offender registry for the state of Connecticut, pursuant toP.A. 99-183, Section 8 (General Statutes § 54-257), which became effective July 1, 1999.
Upon being processed into the department of correction, the Pace was required by agents of one or both of the defendants to CT Page 2547 register his name and identifying factors, as that term was defined at the time in P.A. 98-111, Section 1(3) (now General Statutes § 54-250 (3)), with the defendant commissioner of public safety.[4]
The complaint and application for injunction alleges, inter alia, that the defendants should not have taken the information contained in the identifying factors segment of the registry and prays that those records be destroyed. The plaintiff bases his complaint and application for injunction on the premise that he is not required to register as a sexual offender because his conviction and the circumstances surrounding his plea were not covered by the statute at the time of his plea and conviction, and the current laws cannot be applied to him retroactively.
"[A] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Branch v. Occhionero,239 Conn. 199, 207, 681 A.2d 306 (1996). "It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances." (Internal quotation marks omitted.) Anderson v. Latimer Point Management Corporation,208 Conn. 256, 262, 545 A.2d 525 (1988). "[T]he issuance of an injunction rests within the sound discretion of the trial court." (Internal quotation marks omitted.) Id. "In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from the interference by injunction." (Citation omitted; internal quotation marks omitted.) Id. "An injunction is an extraordinary remedy which is not mandatory, but is left to the court's sound discretion even if there is a proper showing of irreparable harm." Demers Exposition Services. Inc. v. Porter, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 466718S (September 12, 1995, Goldberg, J.). "Injunctive relief may not lie where it is predicated on the fears and apprehensions of the party applying for it or where it would be incompatible with the equities of the case . . . ." (Citations omitted.) Karls v. Alexandra Realty Corp. , 179 Conn. 390, 402,426 A.2d 784 (1980).
"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, [the Supreme Court] utilize[s] well established rules of statutory construction. Our point of departure is General Statutes § 55-3, CT Page 2548 which states: No provision of the general statutes, not previously in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The `obligations' referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only . . . . this presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . . Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect. . . . We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect." (Citations omitted; internal quotation marks omitted.) Colonial Penn Ins.Co. v. Bryant, 245 Conn. 710, 718-19, 714 A.2d 1209 (1998). "It is important to note at the outset that the mere fact that a statute is retrospective does not itself render it invalid. . . . Thus, General Statutes § 55-3 . . . establishes a rule of presumed legislative intent . . . rather than a rule of law." (Citation omitted.) Schieffelin Co. v. Department of Liquor Control,194 Conn. 165, 174, 479 A.2d 1191 (1984). "Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislative and common law principles governing the same general subject matter." (Internal quotation marks omitted.)Sears, Roebuck Co. v. Board of Tax Review, 241 Conn. 749,758-59, 699 A.2d 81 (1997). Moreover, the words of a statute are to be given their "commonly approved meaning, unless a contrary intent is clearly expressed"; Holmquist v. Manson, 168 Conn. 389,393 (1975); and a "statute is to be read as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." Ford Motor Credit Co. v. B.W.Beardsley, Inc., 208 Conn. 13, 18 (1988).
The plaintiff argues that his fourth degree sexual assault conviction was not a crime covered by the registration of sexual offenders procedures and he was released at a point in time, September 23, 1998 with regard to those sexual offenses that is also not covered by the statute. The defendants maintain that the CT Page 2549 statute does apply to the plaintiff by its clear language and intent and that the plaintiff does have to register.
General Statutes § 54-251 (a) states in pertinent part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victimwho is a minor, and is released in the community on or after October 1, 1998, shall, within three days following such release, register his name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct, and shall maintain such registration for ten years." (Emphasis added.) Likewise, General Statutes § 54-252 (a) issues similar requirements for those who committed a more serious crime: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a sexually violent offense,
and is released into the community on or after October 1, 1988, shall, within three days following such release or October 1, 1998, whichever is later, register his name, identifying factors, criminal history record, . . . and residence address with the Commissioner of Public Safety on such forms and in such locations as said commissioner shall direct, and shall maintain such registration until released from this obligation in accordance with section 54-255." (Emphasis added.)
The term "release into the community" is a term specifically defined in Public Act 98-111, § 1(9) (now General Statutes § 54-250 (9)) as follows: "`Release into the community' means, with respect to a conviction or a finding of not guilty by reason of mental disease or defect of a criminal offense against avictim who is a minor, a sexually violent offense or a felonyfound by the sentencing court to have been committed for sexualpurposes, (A) a sentence of probation or any other sentence under section 53a-28 that does not result in the offender's placement in the custody of the Commissioner of Correction; (B) release from a correctional facility at the discretion of the Board of Parole, by the Department of Correction to a program authorized by section 18-100c or upon completion of the maximum term or terms of the offender's sentence or sentences, or to the supervision of the Office of Adult probation in accordance with the terms of the offender's sentence; or (C) release from a hospital for mental illness or a facility for persons with mental retardation by the Psychiatric Security Review Board on conditional release pursuant to section 17a-588 or upon termination of commitment to the Psychiatric Security Review CT Page 2550 Board. (Emphasis added.)
In addition, General Statutes § 54-252 (c) states: "Notwithstanding the provisions of subsection (a) and (b) of this section, during the initial registration period following October 1, 1998, the Commissioner of Public Safety may phase in completion of the registration procedure for persons released in the community prior to said date over the first three months following said date. . . ."
Here, the plaintiff is covered by Connecticut's sex offender registration laws. The plaintiff will be "released into the community" after October 1, 1998. The plaintiff's March 18, 1999 sentencing is based, in part, on his violation of probation — probation that he was put on as a result of the fourth degree sexual assault convictions.[5] Since the statutory language sets the triggering date for when the plaintiff is "released into the community," not when he was convicted of the sexual offenses, there is a retroactive effect, and the plaintiff now falls within the scope of General Statutes §§ 54-251 (a) and 54-250 (9). Moreover, assuming arguendo that the plaintiff was "released into the community" on September 23, 1998, he is still covered by the language and intent of Connecticut's Megan's Law and the requirement to register. General Statutes § 54-252 (c) specifically allows the commissioner of public safety to phase in completion of the registration procedure for those offenders released before October 1, 1998. Even though the plaintiff argues this provision falls under the section of the statute addressing sexually violent offenses and does not pertain to him, a view towards the legislative history rebuts that contention.
Indeed, Senator Williams stated: "Essentially it repeals the existing sex offender registration law, Megan's law, and replaces it with a new version of Megan's law. Which is a more detailed, and comprehensive registration system. The most significant changes include, increasing the number of offenses that require registration. Creating two levels of registration. One for violent crimes, and one for crimes against minors. Requiring offenders convicted of violent crimes released back to October 1988 to submit to registration. And requiring the Department of Public Safety to maintain the sex offender registry and verify the information either quarterly or annually." 41 S. Proc., Pt. 6, 1998 Sess., pp. 1696-97, remarks of Senator Donald E. Williams, Jr. Senator Williams further stated that "the purpose of this Section is to acknowledge the fact that we are dealing CT Page 2551 with explosive and powerful information in a way that we deem appropriate. Because we look at sexual crime, sexual offenses that are violent, sexual offenses against minors, as something that we have to take strong action against." 41 S. Proc., supra, p. 1700, remarks of Senator Donald E. Williams, Jr.
Representative Lawlor stated: "In initially describing the intent and the content of this bill I tried to emphasize that, but I share your concern. In other words, in the end what will be available is a lengthy list of names and addresses and offenses, but I think for the ordinary person in the street seeing a statute number or even the name of the offense doesn't really tell you the story because as you point out, there could be some persons convicted of sexual assault 2nd degree which is a very serious felony, but which is also statutory rape which may not be an indication of a predatory nature of the person. In other words, a boyfriend who is 18 and a girlfriend who is 15, that's definitely against the law and it's obviously prosecuted, but it's not necessarily that the predatory conduct with an innocent unsuspecting victim and I think the challenge to our law enforcement community is to figure out a way in which that those distinctions can be clearly conveyed to the members of the community so that if you or I received this list or accessed it on the internet we actually know who is who, who to be worried about and who to not be concerned about and there could be anywhere from 10 to 20 thousand names based on how this is specifically implied — applied going forward and I think as the government owe it to the citizens of this state to figure out a way that we can clearly identify which persons on that list are actually dangerous and predatory in nature and that is a challenge that we'll have to rely on our criminal justice community to take up and to execute." 41 H.R. Proc., Pt. 11, 1998 Sess, . pp. 3759-61, remarks of Representative Michael P. Lawlor.
The plaintiff further argues that he was not given the statutory admonition by the sentencing court on May 13, 1998 regarding his fourth degree sexual assault convictions and that either the statute cannot apply to him without the court warning him of the exposure to registration, or in the alternative, that he would not have pled out to fourth degree sexual assault. The defendants assert, again, that the legislative language and intent require the plaintiff to be a registered sexual offender, even without the sentencing court informing the plaintiff that he would be registered. CT Page 2552
It is true that both General Statutes §§ 54-251 (a) and 54-252
(a) contain the following provision: "Prior to accepting a plea of guilty or nolo contendre from a person with respect to a [criminal offense against a victim who is a minor or sexually violent offense], the court shall (1) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section and (2) determine that the person fully understands the consequences of his plea.
However, applied here, the legislature did not intend the lack of or failure to inform about registration requirements to invalidate the statute. First, the sentencing court did not have the benefit of the existence of the directive provision as Public Act 98-111 amended the statute after May 13, 1998. Second, there is no provision, clause, sentence or portion of the statute invalidating or remedying the application of the registry requirement if the court does not inform the person who pleads guilty about being subject to registration. If the legislature intended such an invalidating provision to apply, they could have expressed it. "Where, as here, the language of a statute is clear and unambiguous, courts may not by construction supply omissions in a statute merely because the court feels that it has good reasons for doing so." Simko v. Zoning Board of Appeals,205 Conn. 413, 418, 533 A.2d 879 (1987). Third, a review of legislative history again adds insight as to the intent for the plaintiff to be required to register.
"This bill is in addition to what is popularly known as Megan's law. It makes a number of changes in the sexual offender registration format and addresses some potential loopholes that have been identified to the Legislature by the law enforcement agencies and branches." 42 S. Proc., Pt. 10, 1999 Sess., p. 3200, remarks of Senator Donald B. Williams, Jr. "Let me outline some of the specific changes. First of all, fourth degree sexual assault which is a misdemeanor. In some cases already — a conviction for that already requires persons to register. Although the limitation is so narrow that it was clear that it was creating some confusion. So on this year's bill, all persons convicted of sexual assault fourth degree are required to register and there is some limited discretion to not publicly release that information, depending on the circumstances. . . . There is a standing requirement under our law that persons who commit any felony, in part for sexual purposes, are required to register. And this is an attempt to get around the artful tactics CT Page 2553 of some defense attorneys to have their client plead guilty to a crime that's not currently not on the Megan's Law list and thereby avoid the registration requirement. Last year we expanded it to cover other felonies which are in part related to sexual misconduct and this year's bill requires, defines more precisely what we mean by sexual purposes." 42 H.R. Proc., Pt. 11, 1999 Sess., pp. 3881-82, remarks of Representative Michael P. Lawlor.
Therefore, for all the reasons set out above, Connecticut's Megan's Law and sexual offender registry applies to the plaintiff. The "release into the community" language as well as the legislative history achieve a retrospective effect, and therefore, the plaintiff's application for injunctive relief is denied.
JOHN W. MORAN, JUDGE