EVELEIGH, J.
**136 In this certified appeal, we are tasked with determining whether, pursuant to General Statutes § 42-150bb,[1] a defendant may be awarded attorney's fees when the plaintiff withdraws an action as a matter of *1148 right pursuant to General Statutes § 52-80.[2] The plaintiff, the Connecticut Housing Finance Authority, had obtained a promissory note guaranteeing the payment of $216,500 by the named defendant, Asdrubal Alfaro.[3] **137 After the defendant failed to make the required payments on the note, the plaintiff filed a foreclosure action. When the action had been pending for almost one year, the plaintiff withdrew its action as a matter of right under § 52-80 prior to any hearing on the merits. The defendant thereafter sought an award of attorney's fees pursuant to § 42-150bb. The trial court denied the defendant's motion for attorney's fees, and the Appellate Court affirmed the judgment of the trial court. See Connecticut Housing Finance Authority v. Alfaro , 163 Conn. App. 587, 589, 135 A.3d 1256 (2016). We conclude that, in certain circumstances, § 42-150bb permits an award of attorney's fees to a defendant when a plaintiff withdraws an action as of right prior to a hearing on the merits and, accordingly, reverse the judgment of the Appellate Court.
The following undisputed facts and procedural history are relevant to this appeal. On May 24, 2004, the defendant executed a mortgage, which was secured by a parcel of residential property located at 465 Greenwood Street in the city of Bridgeport, and a promissory note in the amount of $216,500, which was made payable to Guaranty Residential Lending, Inc. On June 27, 2012, the plaintiff commenced the present foreclosure action alleging, inter alia, that the mortgage had been assigned to it and that the defendant had failed to make payments on the note. The plaintiff further alleged that, pursuant to an acceleration clause, it had demanded full payment of the note's balance.[4]
The defendant filed an answer to the plaintiff's complaint, admitting only that he was in possession of the property. The defendant also asserted two special defenses, each contending that the plaintiff lacked standing to bring the action. The plaintiff filed a motion **138 for summary judgment, arguing that there was no genuine issue of material fact and that it was entitled to foreclose on the mortgage as a matter of law. The defendant objected to the plaintiff's motion for summary judgment, contending that there were several unresolved genuine issues of material fact, including whether the plaintiff owned the note and was entitled to enforce it.
Before the trial court ruled, however, the plaintiff withdrew its motion for summary *1149 judgment. Shortly thereafter, the plaintiff withdrew the present action as a matter of right pursuant to § 52-80. The plaintiff did not provide any reason for these withdrawals. The defendant subsequently filed a motion for an award of attorney's fees pursuant to § 42-150bb, claiming that he had "successfully defended" the present action as a result of the plaintiff's withdrawal of the underlying complaint. The plaintiff objected to the defendant's motion, asserting, among other things, that it had an absolute right to withdraw the action pursuant to § 52-80, and that such a withdrawal, prior to any hearing on the merits or the rendering of a judgment, does not constitute a successful defense.
The trial court denied the defendant's motion for an award of attorney's fees. The trial court agreed that the plaintiff's withdrawal of the action as a matter of right pursuant to § 52-80, prior to any hearing on the merits, did not mean that the defendant had "successfully defended" the action. According to the court, there were "a myriad of reasons that the plaintiff withdrew the action, including but not limited to the plaintiff deciding that it did not want to redeem the property."[5] The trial **139 court reasoned further that, "[i]f the defendant's claim were accepted, lenders would be unreasonably exposed to claims for attorney's fees every time a lender withdrew a foreclosure action."
The defendant appealed from the trial court's judgment to the Appellate Court, which affirmed. Connecticut Housing Finance Authority v. Alfaro , supra, 163 Conn. App. at 594, 135 A.3d 1256. The Appellate Court reviewed the trial court's decision for clear error only, reasoning that the question of whether the defendant had "successfully defend[ed]" the action was a factual one to which deference should be afforded. Id., at 592, 135 A.3d 1256. The Appellate Court concluded that, because the plaintiff's withdrawal of the action could have been for any reason, and there was no evidence offered to prove that withdrawal resulted from the special defenses, the defendant had failed to meet his evidentiary burden of establishing an entitlement to attorney's fees. Id., at 593-94, 135 A.3d 1256. The Appellate Court did not engage in any statutory construction of § 42-150bb, although it observed that, "to successfully defend an action, a consumer party must prevail on the merits of [an] answer or special [defense]." (Internal quotation marks omitted.) Id., at 593, 135 A.3d 1256. Specifically, the Appellate Court declined to reach the question of whether a plaintiff's withdrawal of an action, as of right, in response to a special defense could ever constitute a successful defense as contemplated by § 42-150bb, because the defendant had not established the factual predicate for such a claim in the present case. Id., at 591, 135 A.3d 1256.[6] This appeal followed.[7]
**140 *1150 The defendant argues that, given the language used in § 42-150bb and that provision's legislative history, he was not required to prevail on the merits of his special defense, or to defeat the underlying obligation, in order to show that he had successfully defended the present foreclosure action. According to the defendant, a plaintiff's withdrawal of its action, as of right, can qualify as a successful defense. Specifically, the defendant contends that the withdrawal of the present action followed, and was prompted by, his contesting of the plaintiff's standing. Moreover, the defendant claims the Appellate Court improperly required him to provide further evidence of the reason for the plaintiff's withdrawal of the action, because this information was uniquely in control of the plaintiff and provides an unworkable standard that is inconsistent with the statute's remedial purpose.[8] We agree that, in certain circumstances, a plaintiff's withdrawal of an action as of right under § 52-80 prior to a hearing on the merits may constitute a successful defense, entitling the defendant to attorney's fees pursuant to § 42-150bb. Consequently, we conclude that the Appellate Court improperly affirmed the judgment of the trial court on the ground that the defendant had failed to meet his burden of establishing his right to attorney's fees.
We begin with the standard of review. Because the defendant's claim requires us to construe the meaning and scope of the phrase "successfully ... defends,"
**141 in § 42-150bb, our review is de novo.[9] See James v. Commissioner of Correction , 327 Conn. 24, 29, 170 A.3d 662 (2017) (questions of statutory construction present issues of law subject to plenary review). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine *1151 that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance **142 to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter .... Importantly, ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation.... In other words, statutory language does not become ambiguous merely because the parties contend for different meanings." (Citations omitted; internal quotation marks omitted.) In re Elianah T.-T. , 326 Conn. 614, 620-21, 165 A.3d 1236 (2017).
The term "successfully ... defends" is not defined within § 42-150bb or elsewhere in the General Statutes.[10] It is well established that "[w]here a statute does not define a term it is appropriate to look to the common understanding expressed in the law and in dictionaries." Caldor, Inc. v. Heffernan , 183 Conn. 566, 570-71, 440 A.2d 767 (1981). The word "successful" is defined with substantial similarity in a number of dictionaries. The American Heritage College Dictionary (4th Ed. 2002) defines "successful" as "[h]aving a favorable outcome," and "[h]aving obtained something desired or intended ...." Similarly, Webster's Third New International Dictionary (2002) defines "successful" as "resulting or terminating in success," "gaining or having gained success,"
**143 and "having the desired effect ...." The word "defend" is also defined with substantial similarity in a number of dictionaries. The American Heritage College Dictionary, supra, defines "defend" as "[t]o make or keep safe from danger, attack, or harm." Webster's New Third International Dictionary, supra, defines "defend" as "to deny or oppose the right of the plaintiff [in regard to] a suit or a wrong charged," "to oppose or resist [a] claim at law," and "to contest [a] suit." Black's Law Dictionary (4th Ed. 1968) similarly defines "defend" as follows: "To prohibit or forbid. To deny. To contest and endeavor to defeat a claim or demand made against one in a court of justice." Likewise, Black's Law Dictionary (10th Ed. 2014) defines "defend" as follows: "To do something to protect someone or something from attack.... To use arguments to protect someone or something from criticism or to prove that something is right.... To do something, to stop something from being taken away or to make it possible for something to continue." These definitions suggest that the legislature intended "successfully ... defends" to include *1152 any resolution of the matter in which the party obtains the desired result of warding off an attack made by the action, regardless of whether there was a resolution on the merits.
We next examine § 42-150bb in relation to other statutes. First, we examine § 52-80, which allowed the plaintiff in the present case to withdraw the action prior to a hearing on the merits. The language codified in § 52-80 was in existence long before the legislature enacted § 42-150bb in 1979, yet the legislature did not seek to exclude actions that were withdrawn as a matter of right from the attorney's fees provisions in § 42-150bb. See General Statutes (1949 Rev.) § 7801; Public Acts 1979, No. 79-453. In construing statutes, we presume that the legislature has created "a harmonious and consistent body of law ...." (Internal quotation marks **144 omitted.) Hartford/Windsor Healthcare Properties, LLC v. Hartford , 298 Conn. 191, 198, 3 A.3d 56 (2010). "We are entitled to presume that, in passing a statute, the legislature not only did so with knowledge of the existing statutes but also that it did not intend to enact a conflicting statute." Perille v. Raybestos-Manhattan-Europe, Inc. , 196 Conn. 529, 541, 494 A.2d 555 (1985). With this principle in mind, the legislature's decision not to exclude matters that are withdrawn pursuant to § 52-80 from the provisions of § 42-150bb lends further support to interpreting § 42-150bb in a manner that allows for attorney's fees when an action is withdrawn, as of right, prior to a hearing on the merits.
Furthermore, General Statutes § 52-81 is also relevant to understanding how a defendant in a civil action that is withdrawn under § 52-80 is treated. Section 52-81 provides in relevant part: "Upon the withdrawal of any civil action after it has been returned to court and entered upon the docket, and after an appearance has been entered for the defendant, a judgment for costs, if claimed by him, shall be rendered in his favor, but not otherwise...." Therefore, § 52-81 entitles a defendant in an action voluntarily withdrawn by a plaintiff to recover costs in the same manner as a defendant in an action in which there has been a determination on the merits in the defendant's favor. See General Statutes § 52-257. Section 52-81 was in existence at the time the legislature adopted § 42-150bb in 1979. See General Statutes (1949 Rev.) § 7802; Public Acts 1979, No. 79-453. As a result, we presume that the legislature was aware of that provision. Accordingly, the presence of § 52-81 further supports the idea that the legislature intended for a defendant in an action that has been withdrawn to be treated similarly to when there has been a determination on the merits in the defendant's favor.
**145 The plaintiff asserts, however that the term "successfully ... defends" in § 42-150bb may be read interchangeably with "prevailing party." Indeed, the plaintiff cites to cases that have interpreted § 42-150bb in a manner requiring consumers to "prevail" in order to obtain attorney's fees. See Wilkes v. Thomson , 155 Conn. App. 278, 283, 109 A.3d 543 (2015) ; see also Retained Realty, Inc. v. Spitzer , 643 F.Supp.2d 228, 239 n.6 (D. Conn. 2009). Relying on language from those cases, the plaintiff contends that a prevailing party includes only those defendants that have succeeded "on the merits of their answer or special defenses." Wilkes v. Thomson , supra, at 283, 109 A.3d 543. In further support of its position, the plaintiff cites various definitions of the term "prevailing party." See Black's Law Dictionary (4th Ed. 1968) (defining "prevailing party" as "[t]hat one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention"); see also *1153 Black's Law Dictionary (10th Ed. 2014) (defining "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded"). Although not controlling, these prior interpretations of § 42-150bb, together with the definitions on which they are based, demonstrate that the plaintiff's proposed interpretation of § 42-150bb is plausible.
On the basis of our review of the plain language of § 42-150bb and other related statutes, we conclude that both parties' proffered interpretations are reasonable and that § 42-150bb is, therefore, ambiguous. Specifically, we deem plausible the defendant's reading of § 42-150bb, which reads the term "successfully ... defends" in a manner permitting an award of attorney's fees following a withdrawal of an action before a hearing on the merits. We also find reasonable, however, the plaintiffs' understanding of § 42-150bb, which requires a party to demonstrate that it has prevailed on the **146 merits of an action in order to be awarded attorney's fees. Accordingly, pursuant to § 1-2z, we turn to extratextual sources.
The legislative history surrounding the enactment of 42-150bb was discussed by this court in Rizzo Pool Co. v. Del Grosso , 240 Conn. 58, 74, 689 A.2d 1097 (1997). "In 1979, [the legislature] enacted No. 79-453 of the 1979 Public Acts, entitled 'An Act Concerning Attorney's Fee Clauses in Consumer Contracts.' ... [S]peaking on behalf of the original bill, Senator Alfred Santaniello, Jr., remarked: 'This bill makes attorney's fee clauses reciprocal. For example, a clause for the benefit of the creditor will automatically allow the attorney's fees to the prevailing debtor who successfully prosecutes or defends an action or counterclaim based upon the contract or lease.' 22 S. Proc., Pt. 8, 1979 Sess., p. 2542....
"Representative [Richard D.] Tulisano expressly stated that the statute was now 'self-enforcing' in that contractual attorney's fee provisions would be reciprocal. He stated: '[T]he legislation before us today provides [for] the first time the ability for consumers in this state to obtain attorney's fees, of [a] reasonable amount, as a result of defending or prosecuting any action in which the commercial party has provided for attorney's fees for their own behalf. What this does is give some equity to the situation. At the present time, many form contracts include attorney's fees provisions for the commercial party, and even though ... that party may be wrong and a consumer successfully defends an action against him, or her, they would not be entitled to receive attorney's fees in defending that action. This will put some equity in the situation to the same extent that any commercial party will receive.' [22 H.R. Proc., Pt. 22, 1979 Sess., pp. 7487-90].
"Furthermore, during ... subsequent consideration of [an amendment proposed Representative Tulisano], **147 Senator Salvatore C. DePiano stated: '[That amendment] would, in effect, eliminate a provision of the bill which would have made it an unfair or deceptive trade practice for a commercial party to have included a clause in a contract or lease which provides for the recovery of attorney's fees by a consumer on terms less favorable than those for the commercial party.... This bill would require that in a specified situation attorney's fees be awarded to a consumer who successfully brings or defends an action based upon a contract or lease whenever such contract or lease provides for the attorney's fees of a commercial party ....' " Rizzo Pool Co. v. Del Grosso , supra, 240 Conn. at 74-76, 689 A.2d 1097.
As we explained in *1154 Aaron Manor, Inc. v. Irving , 307 Conn. 608, 617-18, 57 A.3d 342 (2013), "[t]his court has previously discussed the legislative history of § 42-150bb and recognized that it was designed to provide equitable results for a consumer who successfully defended an action under a commercial contract and the commercial party who was entitled to attorney's fees.... The purpose of § 42-150bb is to bring parity between a commercial party and a consumer who defends successfully an action on a contract prepared by the commercial party." (Citation omitted; internal quotation marks omitted.) It would be wholly incongruous with the design of § 42-150bb to allow a commercial party to avoid paying attorney's fees simply by withdrawing the action pursuant to § 52-80. Indeed, if we were to interpret "successfully ... defends" in the manner the plaintiff proposes, a commercial party that becomes aware, either through the consumer's defense or through its own discovery, of problems in successfully prosecuting its action, could simply withdraw the action to avoid paying the attorney's fees that it has required the consumer to incur. We conclude that allowing for such a result when a consumer has been required to defend an action would be wholly inconsistent **148 with the recognized legislative purpose behind § 42-150bb. Instead, we conclude that, when a consumer moves for attorney's fees under § 42-150bb and is able to show that a commercial party has withdrawn an action, the burden then shifts to the commercial party to demonstrate that the withdrawal was unrelated to the defense mounted by the consumer.[11]
Furthermore, interpreting § 42-150bb in a manner that allows for attorney's fees in the event of a voluntary withdrawal pursuant to § 52-80 is consistent with the approach taken by other states. "In applying a statute providing for an award of costs to the 'prevailing party' or the 'successful party' to cases in which the plaintiff had voluntarily dismissed his action, the courts have generally held that the defendant in such a case is entitled to recover his costs as the 'prevailing party' ...." ( Footnote omitted.) Annot., 66 A.L.R.3d 1087, § 2, p. 1090 (1975); see also id., § 3 (a), pp. 1091-95 (compiling cases in which plaintiff has voluntarily withdrawn action and attorney's fees have been awarded to defendant as "prevailing party"). For example, the Florida Supreme Court has explained that, "[i]n general, when a plaintiff voluntarily dismisses an action, the defendant **149 is the prevailing party.... A determination on the merits is not a prerequisite to an award of attorney's fees where the statute provides that they will inure to the prevailing party." (Citation omitted.) Thornber v. Fort Walton Beach , 568 So.2d 914, 919 (Fla. 1990). Likewise, the Florida District Court of Appeal has held that the fact that an action is voluntarily dismissed without prejudice does not affect whether *1155 the defendant is entitled to an award of attorney's fees under a statute that awards fees to a prevailing party. See State ex rel. Marsh v. Doran , 958 So.2d 1082, 1082 (Fla. App. 2007) ("We hold that a defendant is entitled to recover attorney's fees under [the state statute awarding such] fees to the prevailing party, after the plaintiff takes a voluntary dismissal without prejudice. The refiling of the same suit after the voluntary dismissal does not alter the appellees' right to recover prevailing party attorney's fees incurred in defense of the first suit."); see also Dean Vincent, Inc. v. Krishell Laboratories, Inc. , 271 Or. 356, 358, 532 P.2d 237 (1975) ("The trial court denied attorney's fees because it did not believe [the] defendant qualified as the 'prevailing party.' However, [the] defendant was the prevailing party because a voluntary nonsuit terminates the case in a defendant's favor. Even though the termination was without prejudice and [the] plaintiff could file another case upon the same cause of action, these facts did not prevent [the] defendant from being the party in whose favor the judgment was rendered in that particular case.").
A review of the cases from other jurisdictions also demonstrates that, even if we were to conclude that the term "successfully ... defends" in § 42-150bb is the functional equivalent of "prevailing party," as the plaintiff asserts, our resolution of this appeal need not change. Many of the jurisdictions that conclude a defendant is entitled to attorney's fees when an action is voluntarily withdrawn have statutes that provide for an **150 award of attorney's fees to a "prevailing party." See Fla. Stat. Ann. § 57.105(5) (West 2016) (providing, in certain administrative proceedings, that "administrative law judge shall award a reasonable attorney's fee and damages to be paid to the prevailing party in equal amounts by the losing party and a losing party's attorney or qualified representative"); Or. Rev. Stat. § 20.096(1) (2015) ("[i]n any action or suit in which a claim is made based on a contract that specifically provides that [attorney's] fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable [attorney's] fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract").
In the present case, the defendant properly moved for attorney's fees and made a proper assertion as to the success of his defense in causing the plaintiff to withdraw the action. Thereafter, the plaintiff did not provide any evidence that it had withdrawn the action for a reason unrelated to the defense mounted by the defendant. Indeed, although the plaintiff's counsel may have asserted that the defendant's bankruptcy in federal court prohibited the current action, it did not introduce any evidence on that issue, and the trial court did not make a specific factual finding on that issue. See footnote 5 of this opinion. Accordingly, we conclude that the trial court incorrectly denied the defendant's motion for attorney's fees. The Appellate Court affirmed the judgment of the trial court, concluding that the defendant did not meet his burden of demonstrating that the withdrawal of the action was as a result of his defense. Having now clarified that once the consumer asserts that the action was withdrawn pursuant to § 52-80 as a result of the consumer's actions, the burden then **151 shifts back to the commercial party to demonstrate that the withdrawal was not a result of the consumer's defense, we conclude that the Appellate Court incorrectly affirmed the judgment of the trial court and that the case must be *1156 remanded to the trial court for further proceedings consistent with this opinion.[12]
Once the defendant seeks attorney's fees on the ground that the action has been voluntarily withdrawn by the plaintiff as a result of the defendant's actions, the trial court must then make a factual determination, by a preponderance of the evidence, as to whether the withdrawal is a result of the defendant's defense. This court's decision in Anderson v. Latimer Point Management Corp. , 208 Conn. 256, 265-66, 545 A.2d 525 (1988), is instructive regarding what conduct is necessary to obtain attorney's fees pursuant to § 42-150bb. In Anderson , this court applied § 42-150bb to a lease agreement. Id., at 265, 545 A.2d 525. Specifically, this court determined that the plaintiff in that case could not obtain attorney's fees following a judgment in his favor on certain counterclaims brought by a corporate defendant because that judgment was based on certain inadequacies in that **152 defendant's bylaws, not the plaintiff's pursuit of the underlying complaint, which had alleged violations of the lease. Id., at 265-66, 545 A.2d 525. In deciding that the plaintiff was not entitled to attorney's fees pursuant to § 42-150bb, this court examined the exact nature of the proceedings and what specifically caused the judgment to be rendered in the plaintiff's favor. Id.
We disagree with the plaintiff that permitting a defendant to recover attorney's fees in the present circumstances could lead to the "award of fees to those who raised meritless defenses or no defense at all, and that will result in wholly unreasonable and impractical results." The award of attorney's fees by the trial court is governed by this court's decision in Rizzo Pool Co. v. Del Grosso , supra, 240 Conn. at 76-77, 689 A.2d 1097. In that case, this court determined that the amount of the fees paid pursuant to § 42-150bb must be reasonable in relation to the amount of work performed by the defendant's counsel. Id. If the defendant's counsel performed any amount of work that resulted in the plaintiff's withdrawal of that action, then the defendant's counsel should be permitted to recover the costs of doing that work so long as it is reasonable-a determination to be made by the trial court. The plaintiff's concern that fees will be awarded for "meritless defenses or no defenses at all" is baseless, as the trial court has the discretion to disallow attorney's fees in cases in which defense counsel took little or no action that resulted in the plaintiff's voluntary withdrawal.[13]
**153 *1157 We conclude, therefore, that the trial court is permitted to make findings regarding the reasons for the plaintiff's withdrawal of an action. The findings need not be made after a full evidentiary hearing. Instead, once a defendant moves for an award of attorney's fees pursuant to § 42-150bb after a termination of proceedings that in some way favors the defendant, there exists a rebuttable presumption that the defendant is entitled to such fees unless the plaintiff can show, by a preponderance of the evidence, that the withdrawal occurred because of some reason other than the actions taken by the defendant's counsel. The plaintiff can show its reasons for withdrawing the action through affidavits, and it is for the trial court to determine whether an award of attorney's fees is proper in light of the totality of the circumstances. The trial court, after reviewing the affidavits, may wish to conduct a hearing to resolve any questions created; however, the trial court is not required to do so.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for further proceedings consistent with this opinion.
In this opinion ROGERS, C. J., and PALMER, McDONALD and ROBINSON, Js., concurred.
**154 ESPINOSA, J., with whom, D'AURIA, J., joins, dissenting.
This certified appeal requires us to interpret the meaning of the phrase "successfully ... defends an action," as used in General Statutes § 42-150bb,[1] where a commercial party plaintiff, here, the plaintiff, the Connecticut Housing Finance Authority, has withdrawn an action as a matter of right prior to any hearing on the merits pursuant to General Statutes § 52-80,[2] and a defendant-consumer, the defendant Asdrubal Alfaro, thereafter seeks attorney's fees. The majority concludes that, *1158 when a plaintiff withdraws its action as a matter of right, it creates "a rebuttable presumption" that the defendant has "successfully ... defend[ed] an action" and, accordingly, is owed fees under § 42-150bb. I interpret the operative statutory language in § 42-150bb to require a defendant to win-or actually to prevail in-the action, as evidenced by a "[material] alter[ation] [of] the legal relationship between the parties ...." (Internal quotation marks omitted.) Wallerstein v. Stew Leonard's Dairy , 258 Conn. 299, 304, 780 A.2d 916 (2001). A material alteration of the legal relationship between the parties does not occur when a plaintiff withdraws its action as a matter of right. Put another way, all that the defendant gains when the plaintiff withdraws its action as of right is a return to the status quo, which means that an action could be **155 brought against him again tomorrow. That is not winning. Thus, I disagree with the majority and, accordingly, respectfully dissent.
To begin, I agree with the facts and procedural background as set forth by the majority opinion and, thus, I need not repeat them in this dissent. I also agree with the majority that, in determining the meaning of the phrase "successfully ... defends" in § 42-150bb, we apply plenary review in accordance with General Statutes § 1-2z.[3] See, e.g., Mayer v. Historic District Commission , 325 Conn. 765, 774, 160 A.3d 333 (2017).
I turn first to the statutory text, as § 1-2z requires. Section 42-150bb provides in relevant part that in an action on a consumer contract that provides for recovery of attorney's fees by the commercial party, "an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends" that action. Because "the statute does not define the phrase ['successfully ... defends an action'], in accordance with General Statutes § 1-1 (a), we look to the common understanding expressed in dictionaries in order to afford the term its ordinary meaning." In re Elianah T.-T. , 326 Conn. 614, 622, 165 A.3d 1236 (2017).
I agree with the majority that the definitions of the component terms "successfully" and "defend" fail to provide a single unambiguous meaning to the phrase as used in § 42-150bb. My review of the definitions of the terms in § 42-150bb leads me to conclude, however, that "successfully defend" is the functional equivalent of "prevailing party." Specifically, the occurrence of the phrase "successfully ... defends" in the definition of **156 "[p]revailing party" in Black's Law Dictionary (5th Ed. 1979), a review of related statutes, and the contextual usage of "successfully ... defends an action" in § 42-150bb provide further clarity.
The phrase "successfully defends" appears in Black's Law Dictionary, supra, as part of the definition of "[p]revailing party," which specifically provides in relevant part: "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention...." This definition of prevailing party hews very closely to the ordinary understanding that is created when one combines the definitions of the component words of the phrase "successfully ... defends an action," and is functionally equivalent. See *1159 Graham Court Owner's Corp. v. Taylor , 24 N.Y.3d 742, 752, 28 N.E.3d 527, 5 N.Y.S.3d 348 (2015) (interpreting phrase "successful defense" in New York's landlord-tenant reciprocity statute, N.Y. Real Property Law § 234 [McKinney 2006], to mean "prevailing party, who has achieved 'the central relief sought' ").
Because "successfully defends" and "prevailing party" are functional equivalents, this court's interpretations of other fee statutes that utilize the term "prevailing party" in their text provide additional support to the proper meaning of "successfully ... defends an action" in § 42-150bb. In the context of other fee statutes, this court has recognized that "[i]t is elementary that, whether fees and costs are a matter of right or discretion, they ordinarily are awarded to the party that prevails in the case and, until there is a prevailing party, they do not arise." (Internal quotation marks omitted.) Barry v. Quality Steel Products, Inc. , 280 Conn. 1, 24, 905 A.2d 55 (2006) (referring to General Statutes § 52-257, fees of parties in civil actions); see also Frillici v. Westport , 264 Conn. 266, 284, 823 A.2d 1172 (2003) (quoting to same effect in context of product liability **157 action under General Statutes § 52-240a ). In other words, the prevailing party is the one who wins the lawsuit.
In construing the phrase "successfully defends," we also must consider the meaning of the accompanying phrase "successfully prosecutes," and such consideration lends further support to the functional equivalence of "successfully defends" and "prevailing party." The two verbs share a single modifier. Because this language is linked, one phrase cannot be defined accurately without reference to the other.
"Prosecute" is defined in Black's Law Dictionary, supra, as: "To follow up; to carry on an action or other judicial proceeding; to proceed against a person criminally. To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion. " (Emphasis added.) This court also has interpreted the phrase "successfully prosecute" to require the party in question to prove the underlying claim in an action. See Blake v. Levy , 191 Conn. 257, 261, 464 A.2d 52 (1983) (holding that, in tortious interference case, "[f]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious" [internal quotation marks omitted] ). Moreover, the term "successfully prosecutes" accompanies the term "successfully defends" in the definition of "[p]revailing party" in Black's Law Dictionary, supra, strongly supporting an understanding that "successfully prosecutes" and "successfully defends" are interrelated terms and, depending on the context, functional equivalents to "[p]revailing party." Following this relationship to its logical conclusion in the context of § 42-150bb, if a successful prosecution requires a party to prove the underlying claim in an action; see Blake v. Levy , supra, at 261, 464 A.2d 52 ; then a successful defense may be interpreted similarly to require a party to disprove the underlying claim in an action.
**158 Disproving a claim on its merits is not the same as winning a case by default because the opposing party has withdrawn as a matter of right. In the latter situation, the defendant's efforts have not caused the withdrawal, and no change to the parties' legal relationship has occurred. Rather, the withdrawal results from the plaintiff's voluntary choice and not from a successful defense. Accordingly, I reject the majority's contention that one may win an action by virtue of the opposing party's voluntary withdrawal.
The majority relies on General Statutes § 52-81 as support for its contention that costs are due to a defendant whenever a civil action is withdrawn. Although § 52-81 sets forth when costs are due following a *1160 withdrawal under § 52-80, its scope has not been interpreted by this court. Further, nothing in § 52-81 indicates that the defendant will be awarded costs when a determination in his favor is made on the merits. Moreover, costs are different from attorney's fees, and neither § 52-80 nor § 52-81 discusses attorney's fees. Thus, I am persuaded that the specific attorney's fees statutes discussed previously, § 52-257 for civil actions and § 52-240a for product liability, are relevant to interpreting the award of attorney's fees under § 42-150bb, but § 52-81 is not.
The majority contends that individual definitions of "successful" and "defend" support an understanding that "successfully ... defends" means "any resolution of the matter in which the party obtains the desired result of warding off an attack made by the action, regardless of whether there was a resolution on the merits." I agree generally that the definitions of these individual terms may reasonably support a commonly understood meaning of "successfully ... defends an action" as encompassing temporary relief from a legal action, unaccompanied by a resolution on the merits. I contend, however, as previously explained, that an **159 interpretation of the operative statutory phrase is incomplete without consideration of the related term "prevailing party," a review of related statutes and the linked phrase, "successfully prosecutes." Thus, although I ultimately determine that my view of the common understanding of "successfully ... defends an action" is persuasive, I agree with the majority that the phrase "successfully ... defends an action" is susceptible to more than one reasonable interpretation and, therefore, ambiguous when read in the context of a withdrawal as a matter of right prior to a hearing on the merits. This ambiguity requires us to consider extratextual evidence. See, e.g., Mayer v. Historic District Commission , supra, 325 Conn. at 775, 160 A.3d 333 ("When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter .... The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." [Internal quotation marks omitted.] ). Unlike the majority, however, I conclude, after reviewing such evidence, that one who "successfully ... defends an action," as contemplated by § 42-150bb, is functionally equivalent to a prevailing party. A prevailing party is one who wins a lawsuit, which is demonstrated by a material alteration of the parties' legal relationship. A successful defense, in my view, cannot occur when the plaintiff withdraws its action as a matter of right prior to a hearing on the merits.
I observe initially that the legal origin of the rebuttable presumption recognized by the majority, which is that attorney's fees are owed to a defendant once he has asserted that the plaintiff withdrew its action as a **160 matter of right pursuant to § 52-80 as a result of the defendant's actions, unless the plaintiff provides as alternative reason for the withdrawal, is far from clear. The text and legislative history of § 42-150bb do not provide support for the majority's interpretation, and it is otherwise unexplained. Despite citing to decisions in the courts of other states, the majority does not provide any case law that explicates this rebuttable presumption.
The majority's interpretation employs a rationale similar to the catalyst theory, which was discarded by the United States Supreme Court in *1161 Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources , 532 U.S. 598, 121 S. Ct. 1835, 149 L.Ed. 2d 855 (2001). The catalyst theory posits that attorney's fees are owed to a party who demonstrates that its actions catalyzed the "desired result" by bringing "about a voluntary change in the [opposing party's] conduct." Id., at 601, 121 S.Ct. 1835. In rejecting the catalyst theory, the court observed that it was not reconcilable with "the 'American [r]ule' that attorney's fees will not be awarded absent 'explicit statutory authority' ...." Id., at 608, 121 S.Ct. 1835. It is particularly instructive that in rejecting the catalyst theory, the court cited to the principle that "[o]nly when a party has prevailed on the merits of at least some of his claims ... has there been a determination of the substantial rights of the parties ...." (Internal quotation marks omitted.) Id. The majority claims that its interpretation is necessary to ensure that a commercial party does not unilaterally withdraw in order to avoid paying attorney's fees where problems in successfully prosecuting an action have been revealed. I note that the United States Supreme Court, in construing the analogous term, "prevailing party," rejected a similar argument that "the 'catalyst theory' is necessary to prevent [parties] from unilaterally mooting an action before judgment in an effort to avoid an award of attorney's **161 fees" as "entirely speculative and unsupported by any empirical evidence ...." Id. Although federal precedent is not binding on this court, I find this analysis persuasive and applicable to the present case. See Lyme Land Conservation Trust, Inc. v. Platner , 325 Conn. 737, 759, 159 A.3d 666 (2017) ( "Connecticut follows the American rule").
Moreover, this method of proving that one party catalyzed the result sets up a system of competing affidavits where the trial court must then make factual determinations on why, precisely, an action was withdrawn. To make these determinations where both parties offer plausible reasons for the withdrawal, the trial court may need to hold an evidentiary hearing to hear a witness or to obtain other evidence. This not only causes more litigation in a situation where a case would otherwise be concluded, but also may raise questions of fact and credibility determinations. For instance, when faced with a need to prove its withdrawal was not due to the defendant's actions, a plaintiff may contend that it realized it would require too much money or effort or time to pursue the case to a conclusion, because it knows the defendant will fight every step of the process. Making the necessary factual findings in this situation places a burden on the trial court that is detrimental to judicial economy and requires the parties, including consumers, to use more resources. See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources , supra, 532 U.S. at 609, 121 S.Ct. 1835 (observing that "[a] request for attorney's fees should not result in a second major litigation," and that the court has "accordingly avoided an interpretation of the fee-shifting statutes that would have spawn[ed] a second litigation of significant dimension" [citation omitted; internal quotation marks omitted] ). Moreover, a policy permitting voluntary withdrawals is intended to avoid litigation.
**162 In my review of extratextual evidence, I turn first to the legislative history of § 42-150bb. As discussed by the majority, the legislative history has been interpreted previously by this court. We explained that § 42-150bb"was designed to provide equitable results for a consumer who successfully defended an action under a commercial contract [providing that] the commercial party ... was entitled to attorney's fees." Aaron Manor, Inc. v. Irving , 307 Conn. 608, 617-18, 57 A.3d 342 (2013) ; see also Rizzo Pool Co. v. Del Grosso , 240 Conn. 58, 74-76, 689 A.2d 1097 (1997) (discussing legislative history of § 42-150bb ).
*1162 The majority claims that the legislative intent of assuring parity between commercial parties and consumers supports its interpretation of § 42-150bb as being pro-consumer. I disagree. The majority's rule could give rise to incentives that have a decidedly anti-consumer effect. For instance, the majority's rule may cause a plaintiff to continue pursuing a case in order to avoid liability for the defendant's attorney's fees even in situations in which the plaintiff might have determined on its own not to pursue the case. I also disagree with the majority's claim that its interpretation protects consumers because it prevents a commercial party plaintiff from withdrawing to avoid attorney's fees. This argument ignores an already existing deterrent. Under the existing rules, commercial party plaintiffs are already selective about the lawsuits they bring. Specifically, a plaintiff is disincentivized from bringing a lawsuit by the fact that, pursuant to § 42-150bb, if the case goes to judgment and the defendant prevails, the plaintiff would be liable for attorney's fees.
The majority also alleges that my interpretation of § 42-150bb is anti-consumer. I disagree. By enabling withdrawals as of right without additional burdens of proof, my interpretation supports the goal of ending litigation sooner. From a policy standpoint, this promotes **163 judicial economy, which benefits all parties, including consumers. The majority's interpretation runs counter to principles of judicial economy.
In interpreting the phrase "successfully ... defends an action" in the present case, I observe that the word "defends" was added only after the suggestion of Attorney Raphael Podolsky, speaking on behalf of the Legal Services Legislative Office in support of Senate Bill No. 1559.[4] Attorney Podolsky explained that, as originally drafted, the bill said "that it makes [attorney's fees] reciprocal to the consumer who successfully prosecutes an action or a counterclaim. Most cases in which the consumer will be involved, the consumer will be the defendant. And, if the consumer prevails in defending a suit, he should also get the benefit of the reciprocal attorney's fees, so it ought to say who successfully prosecutes or defends an action or a counterclaim. You need that to have a true reciprocity under the bill." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1979 Sess., p. 801. It is logical to infer that the subsequent incorporation of the phrase "successfully ... defends an action" into the draft statute was intended to ensure that the "consumer [who] prevails in defending a suit" is the recipient of fees, as advocated by Podolsky. The concept of "prevailing" relating to the operative phrase was reinforced by Senator Alfred Santaniello, Jr., who similarly stated that fees would be owed "to the prevailing debtor who successfully prosecutes or defends an action ...." 22 S. Proc., Pt. 8, 1979 Sess., p. 2542.
**164 My interpretation of § 42-150bb also finds support in background principles concerning attorney's fees. Connecticut follows "[t]he general rule of law known as the American rule .... [Under this rule] attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation *1163 marks omitted.) Rizzo Pool Co. v. Del Grosso , supra, 240 Conn. at 72, 689 A.2d 1097. One of the statutory exceptions to the American rule is § 42-150bb. See id., at 73-76, 689 A.2d 1097 ; see also Traystman, Coric & Keramidas, P.C. v. Daigle , 282 Conn. 418, 429, 922 A.2d 1056 (2007) ("Costs are the creature of statute ... and unless the statute clearly provides for them courts cannot tax them.... Section 42-150bb clearly authorizes an award of attorney's fees to the consumer who successfully prosecutes or defends an action or a counterclaim on a consumer contract or lease." [Citation omitted; internal quotation marks omitted.] ). This court has acknowledged that "[t]he purpose of § 42-150bb is to bring parity between a commercial party and a consumer who defends successfully an action on a contract prepared by the commercial party." (Internal quotation marks omitted.) Aaron Manor, Inc. v. Irving , supra, 307 Conn. at 618, 57 A.3d 342.
As discussed previously in this dissenting opinion, this court has interpreted other fee statutes that award fees to the "prevailing party" in the case. See Barry v. Quality Steel Products, Inc. , supra, 280 Conn. at 24, 905 A.2d 55. In Frillici v. Westport , supra, 264 Conn. at 285, 823 A.2d 1172, this court analyzed which party prevailed in the action. Specifically, where the trial court rendered judgment in the defendants' favor on all counts of the plaintiffs' amended complaint and was upheld on appeal, and the plaintiffs did not receive any of the relief they had sought, the defendants "prevailed." Id. In other words, the defendants won the lawsuit.
**165 As examined previously, the definitions of terms in the phrase "successfully prosecutes or defends" closely comport with the definition of "prevailing party," making the terms functional equivalents. See Retained Realty, Inc. v. Spitzer , 643 F. Supp. 2d 228, 232, 239 (D. Conn. 2009) (analogizing, without analysis, party who " 'successfully prosecut[ed] or defend[ed]' " to "prevailing party"); Wilkes v. Thomson , 155 Conn. App. 278, 283, 109 A.3d 543 (2015) (determining that there was no successful defense by defendants when they "did not prevail on the merits of their answer or special defenses"). Even some of the cases cited by the defendant in purported support of his position contain language analogizing one who mounts a successful defense to a prevailing party. See, e.g., Citimortgage, Inc. v. Speer , Superior Court, judicial district of New London, Docket No. CV-09-6001411 (April 30, 2012) (53 Conn. L. Rptr. 888, 889 ) ("the defendant is the prevailing party in the defense of this action" under § 42-150bb ). Therefore, I maintain that the proper interpretation of § 42-150bb requires construing one who "successfully prosecutes or defends" as functionally equivalent to a prevailing party. See Wilkes v. Thomson , supra, at 283, 109 A.3d 543 (The Appellate Court applied § 42-150bb to conclude "that a party does not 'prevail' by filing a dispositive motion that is denied by the trial court, even if the court errs in denying the motion. [Instead] [w]ere the party successfully to appeal and to have judgment rendered in its favor on remand, it would be in a tenable position to claim attorney's fees." Likewise, a party does not prevail "by obtaining a dismissal of the action as moot" after "vacat [ing] the premises [and] voluntarily providing the only relief sought by the plaintiff." Rather, prevailing parties are recognized as those who "prevail on the merits of their answer or special defenses.").
This court has previously interpreted who is a "prevailing party" for attorney's fees purposes. Specifically, **166 this court has recognized the United States Supreme Court's determination, "in construing the [attorney's] fees provision of the Fair Housing Amendments Act; *1164 42 U.S.C. § 3613 (c) (2) ; and the Americans with Disabilities Act; 42 U.S.C. § 12205 ; that the term prevailing party is a legal term of art ... [referring to] one who has been awarded some relief by the court .... Other courts have held that, under various federal fee shifting statutes, the term prevailing party includes a plaintiff who has secured actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff ...." (Citations omitted; internal quotation marks omitted.) Wallerstein v. Stew Leonard's Dairy , supra, 258 Conn. at 304, 780 A.2d 916. By extension, I believe that this same standard should apply when a defendant seeks fees for successfully defending an action pursuant to § 42-150bb, requiring a demonstration that the action's disposition provided "actual relief [to the defendant] on the merits of [the] claim [that] materially alter[ed] the legal relationship between the parties ...." Id. ; see Sole v. Wyner , 551 U.S. 74, 82, 127 S. Ct. 2188, 167 L.Ed. 2d 1069 (2007) (" '[t]he touchstone of the prevailing party inquiry' ... is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute' "); Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources , supra, 532 U.S. at 605, 121 S.Ct. 1835 (precedent "counsel[s] against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties" [emphasis in original] ).
I acknowledge that conflicting authority does exist, holding that a party may prevail when a withdrawal as a matter of right, also known as a voluntary dismissal without prejudice, has occurred. The majority relies on **167 an annotation in 66 A.L.R. 3d 1087, 1089, § 2 (1975) : "In applying a statute providing for an award of costs to the 'prevailing party' or the 'successful party' to cases in which the plaintiff had voluntarily dismissed his action, the courts have generally held that the defendant in such a case is entitled to recover his costs as the 'prevailing party' ...." However, the majority omits the remainder of the sentence, which provides: "although there is some authority holding that the defendant cannot be considered the 'prevailing party' in such a situation, since a voluntary dismissal of the plaintiff's action does not result in a final disposition of the case on its merits." Id. Moreover, the majority omits § 3 (b) of the annotation, which, in contrast to § 3 (a), compiles cases in which the plaintiff has voluntarily withdrawn an action and the defendant was not a "prevailing party." See id., § 3 (b), p. 1095.
Upon review, I contend that stronger and more persuasive authority supports my position that a prevailing party is one who effects a material alteration of the legal relationship between the parties. See 10 C. Wright et al., Federal Practice and Procedure § 2667 (3d Ed. 2017) ("[A] dismissal of the action, whether on the merits or not, generally means that [the] defendant is the prevailing party.... However, courts also have ruled that a dismissal without prejudice does not qualify the defendant as a prevailing party because [the] defendant remains potentially subject to liability." [Footnotes omitted.] ); 20 Am. Jur. 2d 26-27, Costs § 19 (2015) ("[although as] a general rule, where a plaintiff voluntarily dismisses his or her action, [and] the defendant is entitled to recover costs [as a prevailing party] ... it has been held that a dismissal without prejudice does not sufficiently conclude the matter such that a determination of the prevailing party, as a basis for a statutory attorney's fee award, can be stated with certainty; the potential for further litigation on the same issues with **168 possibly contrary outcomes precludes the identification *1165 of a prevailing party"); see also Szabo Food Service, Inc. v. Canteen Corp. , 823 F.2d 1073, 1076-77 (7th Cir. 1987) ("A dismissal without prejudice under Rule 41 [a] [1] [i] does not decide the case on the merits" because a "plaintiff may refile" and "[t]he defendant remains at risk.... Because the ... dismissal is without prejudice ... it is not the practical equivalent of a victory for [the] defendant on the merits."), cert. dismissed, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) ; RFR Industries, Inc. v. Century Steps, Inc. , 477 F.3d 1348, 1353 (Fed. Cir. 2007) ("hold[ing] that a plaintiff's voluntary dismissal without prejudice ... does not bestow 'prevailing party' status upon the defendant," and reasoning that it "does not constitute a change in the legal relationship of the parties because the plaintiff is free to refile its action"); Mitchell-Tracey v. United General Title Ins. Co. , 839 F. Supp. 2d 821, 826 (D. Md. 2012) ("when a defendant remains at risk of another suit on the same claim, he can hardly be considered to be in the same position as a defendant who no longer faces the claim due to a dismissal with prejudice" [internal quotation marks omitted] ); Burnette v. Perkins & Associates , 343 Ark. 237, 242, 33 S.W.3d 145 (2000) ("[O]ne must prevail on the merits in order to be considered a prevailing party under Ark. Code Ann. § 16-22-308. A dismissal without prejudice does not sufficiently conclude the matter such that a determination of the prevailing party can be stated with certainty. The potential for further litigation on the same issues with possible contrary outcomes precludes the identification of a prevailing party for purposes of the statute." [Footnote omitted.] ); D.S.I. v. Natare Corp. , 742 N.E.2d 15, 24 (Ind. App. 2000), ("prevailing party" is one who "successfully prosecutes its claim or asserts its defense" where form of judgment "resolved the dispute generally in the favor of the one requesting [attorney's] fees and altered the **169 litigants' legal relationship in a way favorable to the requesting party").[5]
The defendant asserts that a number of trial court decisions have "recogniz [ed] plaintiffs' unilateral withdrawal[s] as successful defenses ...." The plaintiff counters, however, that "none of the cases contain an in-depth examination of the precise statutory language at issue or analyze the established meaning of the term 'prevailing party.' " I agree with the plaintiff. In the absence of detailed analysis into the meaning of "successfully ... defends," these cases provide no support for the defendant's position.
Although the trial court in Bank of New York v. Bell , 52 Conn. Supp. 32, 39-40, 23 A.3d 121 (2011), analyzed the meaning of "successfully ... defends," the case is distinguishable from the present procedural *1166 situation. In Bell , the plaintiff sought to withdraw the action pursuant to § 52-80 after a "judgment had been entered against the defendant," which "constituted a hearing on issues of fact and, as a result," required the trial court to hold an additional hearing to determine **170 "whether there was cause for the withdrawal." Id., at 33-34, 23 A.3d 121. By contrast, the plaintiff in the present case withdrew the action as a matter of right prior to any hearing on the facts or the merits. There is a difference between withdrawal as a matter of right and withdrawal for cause shown. Where the plaintiff's withdrawal is a matter of right, no justification or hearings are required to effectuate the plaintiff's voluntary and unilateral decision. Where the plaintiff's withdrawal is for cause shown, the plaintiff must justify its withdrawal to the court in a hearing. Whether attorney's fees may be obtained by a defendant in the latter situation is not before the court in the present case.
The defendant also claims that "[d]efendants succeed by maintaining the status quo" and need not defeat the underlying obligation to successfully defend an action pursuant to § 42-150bb. However, the cases cited in support of this allegation are distinguishable in that each case ended with a court's dismissal of the plaintiff's action, not the plaintiff's withdrawal of its action. See, e.g., Centrix Management Co., LLC v. Valencia , 145 Conn. App. 682, 689, 76 A.3d 694 (2013) (defendants obtained judgment dismissing plaintiff's action, which was affirmed on appeal, thereby successfully defending against it). Moreover, from a logical standpoint, it is misleading to assert that the defendant obtained the result he sought in the present case because in fact he did not; a legal action could still be brought against him again at any time.[6] Therefore, he has not succeeded in any real sense.
Although the Appellate Court and the trial courts have construed "successfully prosecutes" or "successfully **171 defends" in the context of § 42-150bb, this court has not directly interpreted those isolated phrases. In Anderson v. Latimer Point Management Corp. , 208 Conn. 256, 265, 545 A.2d 525 (1988), however, this court considered the meaning of the broader phrase "successfully prosecutes or defends an action or a counterclaim based upon the contract or lease," in a case for attorney's fees under § 42-150bb involving a lease agreement. The plaintiff sought attorney's fees for a successful prosecution and successful defense, respectively, after the court entered orders in his favor as to his underlying claim and the defendants' counterclaim. Id., at 265-66, 545 A.2d 525. As relevant to the present appeal, this court determined that the counterclaim had been resolved in favor of the plaintiff "on the basis of the inadequate bylaws [and the plaintiff's complaint] and not on considerations involving the sublease [on which the plaintiff had relied or] ... the counterclaim." Id., at 266, 545 A.2d 525. Accordingly, this court denied attorney's fees on the counterclaim because "the [trial] court's rendering of a judgment in favor of the plaintiff on the counterclaim does not, in reality, constitute a successful defense of a counterclaim under the lease." Id. The court's formulation in Anderson both interprets the impact of the truncated phrase "under the lease" and supports the general concept that a party must have actively contributed to the arguments which led to the result in order to collect attorney's fees pursuant to § 42-150bb. This general *1167 concept supports my contention in the present appeal that a withdrawal as of right "does not, in reality, constitute a successful defense" because the result, withdrawal, arises from the plaintiff's voluntary choice and is not forced by arguments of the opposing party. Although I agree with the majority that Anderson is instructive regarding the conduct necessary to obtain attorney's fees pursuant to § 42-150bb where the trial court has entered orders resolving a case, I distinguish it procedurally **172 from the present appeal where the plaintiff acted unilaterally.
In sum, I would interpret "successfully ... defends an action," as used in § 42-150bb, to require the defendant to actually prevail in the action, demonstrated via a material alteration to the legal relationship between the parties, which does not occur when the plaintiff has withdrawn the action as a matter of right prior to a hearing on the merits. I therefore would affirm the judgment of the Appellate Court.
Accordingly, I respectfully dissent.

General Statutes § 42-150bb provides in relevant part: "Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party.... For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action ... entered in the docket of any court, before the commencement of a hearing on the merits thereof...."

We note that the original summons and complaint also named Bank of America, N.A., and Rosibel Aguero as defendants. Bank of America, N.A., was defaulted for failure to appear and Rosibel Aguero was defaulted for failure to plead. Neither of those parties participated in the proceedings before the Appellate Court. See Connecticut Housing Finance Authority v. Alfaro , 163 Conn. App. 587, 589 n.1, 135 A.3d 1256 (2016). For the sake of simplicity, we refer to Alfaro as the defendant in this opinion.

The note provides in relevant part: "If [b]orrower defaults by failing to pay in full any monthly payment, then [the lender] may ... require immediate payment in full of the principal balance remaining due and all accrued interest."

In objecting to the defendant's motion for attorney's fees, the plaintiff had also argued that, pursuant to federal law, the defendant's discharge in bankruptcy precluded the plaintiff from continuing to pursue its action. Nevertheless, the plaintiff did not introduce any evidence on this point, only an argument by counsel, and the trial court did not make a specific finding on this issue.

We note that the Appellate Court restricted its analysis to whether the defendant had "successfully defend[ed]" the present action within the meaning of § 42-150bb, and therefore assumed, without deciding, that all other requirements for an award of attorney's fees pursuant to that statute had been met. Connecticut Housing Finance Authority v. Alfaro , supra, 163 Conn. App. at 592, 135 A.3d 1256.

We granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly determine that the trial court correctly denied the defendant's request for attorney's fees pursuant to ... § 42-150bb ?" Connecticut Housing Finance Authority v. Alfaro , 321 Conn. 925, 138 A.3d 286 (2016).

In his appeal to this court, the defendant further contends that a defendant should be entitled to recover attorney's fees pursuant to § 42-150bb in any case in which a plaintiff withdraws its action as a matter of right, for whatever reason, without securing any material relief from the defendant. Because this new claim is broader than the one made before the trial court and the Appellate Court, we decline to address it.

The plaintiff contends that the clearly erroneous standard of review should apply because the determination of whether the defendant "successfully prevailed" is a factual one to which this court should defer. Additionally, the plaintiff claims that the defendant did not raise the issue of statutory construction before the trial court or the Appellate Court and, therefore, did not preserve it for appeal.
Contrary to the plaintiff's assertions, the issue of statutory construction is properly preserved. Although the defendant did not make a detailed statutory construction argument at the trial court, he cited § 42-150bb, along with cases applying that statute, as authority in his motion for attorney's fees. The plaintiff responded by distinguishing those cases, and other cases applying the statute, from the present case. The trial court, when denying the defendant's motion for attorney's fees, performed a similar analysis, concluding that an award of fees pursuant § 42-150bb would be proper only if there had been some type of hearing on the merits. Finally, on appeal to the Appellate Court, the defendant clearly raised a statutory construction claim although, as we have explained previously in this opinion, that court declined to address it. Although the Appellate Court's decision was based on a factual determination regarding whether the defendant had proven that the plaintiff had withdrawn the action in response to the defendant's defense, that decision does not negate the fact that the defendant has properly raised a question of statutory construction.

The term "successfully defends" has been employed three other times by our legislature. See General Statutes § 17b-261q(d) (in context of action by nursing home facility to collect debt for unpaid care, "[c]ourt costs and reasonable attorneys' fees shall be awarded as a matter of law to a defendant who successfully defends an action or a counterclaim brought pursuant to this section"); General Statutes § 17b-261r(e) (in context of action by nursing home facility to recover applied income, "[c]ourt costs and reasonable attorneys' fees shall be awarded as a matter of law to a defendant who successfully defends an action or a counterclaim brought pursuant to this section"); General Statutes § 42-410(d) (in context of action for late fees, "[i]f a consumer lease provides for recovery of attorney's fees by the holder, a lessee who successfully defends a collection action is entitled to reasonable attorney's fees from the holder").

The plaintiff asserts that allowing a defendant to recover attorney's fees when an action has been voluntarily withdrawn is contrary to the legislative intent of parity between the commercial entity and the consumer because the commercial entity is only entitled to attorney's fees in the event there is a determination on the merits in its favor. We disagree. First, as we have explained previously in this opinion, although § 42-150bb was intended to provide parity, the genesis of that provision was to protect consumers in light of the fact that form contracts typically provided for attorney's fees to commercial entities. See 22 H.R. Proc., supra, pp. 7487-90. Second, because the plaintiff has the ability to voluntarily withdraw the action, it is necessary to allow for attorney's fees, even without a determination on the merits, so as to protect the defendant if a plaintiff withdraws the action after learning that the action will be unsuccessful as a result of the defendant's actions. Third, allowing the plaintiff to avoid paying the defendant's attorney's fees in the event it can demonstrate that the withdrawal was unrelated to the defense mounted by the defendant furthers the legislative intent of parity.

Although the dissent acknowledges that the legislative history demonstrates that § 42-150bb was enacted to provide parity for consumers because commercial contracts typically already provided attorney's fees for commercial entities, the interpretation of § 42-150bb proposed by the dissent does not provide such parity. Instead, the dissent requires that there be a "material alteration of the legal relationship between the parties." Under the interpretation proposed by the dissent, a commercial entity could initiate an action requiring its consumer to incur significant attorney's fees, the consumer could then demonstrate that the action would ultimately be unsuccessful by filing a persuasive dispositive motion, and then the commercial entity could avoid attorney's fees by voluntarily withdrawing the action before the court has had a chance to rule. On the other hand, our interpretation provides for parity between commercial entities and consumers by allowing commercial entities to demonstrate that a withdrawal was not as a result of its consumer's defense. Furthermore, that determination by the trial court and the ability for a consumer to move for a judgment for costs under § 52-81 are arguably a "material alteration of the legal relationship between the parties."

The dissent asserts that our interpretation of § 42-150bb"employs a rationale similar to the catalyst theory, which was discarded by the United States Supreme Court in Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources , 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed. 2d 855 (2001)." We disagree. Our interpretation of § 42-150bb is not based on the catalyst theory; it is based on unique statutory language in § 42-150bb, the legislative history underlying its enactment, and precedent from other jurisdictions. Furthermore, although a majority of the United States Supreme Court rejected the catalyst theory, Justice Ginsburg, joined by Justices Stevens, Souter, and Breyer dissented. In that dissent, Justice Ginsburg explained as follows: "The [c]ourt today holds that a plaintiff whose suit prompts the precise relief she seeks does not 'prevail,' and hence cannot obtain an award of attorney's fees, unless she also secures a court entry memorializing her victory.... The decision allows a defendant to escape a statutory obligation to pay a plaintiff's counsel fees, even though the suit's merit led the defendant to abandon the fray, to switch rather than fight on, to accord plaintiff sooner rather than later the principal redress sought in the complaint. Concomitantly, the [c]ourt's constricted definition of 'prevailing party,' and consequent rejection of the 'catalyst theory,' impede access to court for the less well heeled, and shrink the incentive Congress created for the enforcement of federal law by private attorneys general.... Nothing in history, precedent, or plain English warrants the anemic construction of the term 'prevailing party' the [c]ourt today imposes." Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources , supra, at 622-23, 121 S.Ct. 1835.

General Statutes § 42-150bb provides in relevant part: "Whenever any contract or lease ... to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease...."

General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action ... returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown."

General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

This court has previously recognized that "[a]lthough we generally restrict our review of a statute's legislative history to the discussions conducted on the floor of the House of Representatives or of the Senate, we will consider such committee hearing testimony of individuals addressing the proposed enactment when such testimony provides particular illumination for subsequent actions on proposed bills, such as in this instance." Elections Review Committee of the Eighth Utilities District v. Freedom of Information Commission , 219 Conn. 685, 695 n.10, 595 A.2d 313 (1991).

Relatedly, I observe also that case law from other jurisdictions is inconsistent even as to whether prevailing party status is accorded following involuntary dismissals without prejudice, with some courts concluding that it is not. See, e.g., Oscar v. Alaska Dept. of Education & Early Development , 541 F.3d 978, 981 (9th Cir. 2008) (holding involuntary "dismissal without prejudice does not alter the legal relationship of the parties because the defendant remains subject to the risk of re-filing" and, therefore, prevailing status is not conferred). Case law is also mixed for voluntary dismissals with prejudice, as noted by the United States Court of Appeals for the Sixth Circuit. See United States v. Alpha Medical, Inc. , 102 Fed. Appx. 8, 9-10 (6th Cir. 2004) ; see also McKnight v. 12th & Division Properties, LLC , 709 F. Supp. 2d 653, 656 (M.D. Tenn. 2010) (citing case law from various courts with opposing views as to whether defendant in action ended by voluntary dismissal with prejudice should be recognized as prevailing party). I note that I make no conclusions as to whether involuntary dismissals without prejudice or voluntary dismissals with prejudice constitute successful defenses under § 42-150bb because those questions are not before the court in the present case.

The plaintiff, in fact, did bring a second action against the defendant and, thereafter, succeeded in obtaining summary judgment as to liability in its favor. Connecticut Housing Finance Authority v. Alfaro , Superior Court, judicial district of Fairfield, Docket No. CV-14-6045155-S (April 20, 2017) (64 Conn. L. Rptr. 324, 326 ).